[No. 11742-4-I.   Division One.   December 19, 1984.]

*In the Matter of the Marriage of* KATHERINE JEAN FERNAU, *Respondent, and* WALTER AUGUST FERNAU III, *Appellant.*

*Short & Cressman, Donald W. Ferrell,* and *Bryan P. Coluccio,* for appellant.

*Michael S. Curtis* and *Blake Howe,* for respondent.

COLEMAN, J.—Walter August Fernau III appeals from an amended decree and amended findings of fact and conclusions of law entered in a dissolution action between himself and Katherine Jean Fernau. Walter assigns error to the trial court's provisions for (1) child support, (2) maintenance, and (3) distribution of the assets and liabilities of the marital community. Katherine cross–appeals on four grounds. First, she alleges error in the trial court's refusal to determine the value of Walter's professional education, medical training and increased earning capacity, and to award a portion of this value to her. Second, Katherine objects to the trial court's failure to expressly reserve her tort claims of outrage and intentional infliction of emotional distress against Walter. Third, she alleges error in the court's award to Walter of a balancing judgment and lien securing the judgment; and fourth, she appeals from the court's refusal to grant her reasonable attorney's fees and expenses. In addition, Katherine requests attorney's

fees on appeal. We affirm in part and remand in part for further proceedings. We deny Katherine's request for attorney's fees on appeal.

The Fernaus were married on December 29, 1972. Their dissolution action was commenced in May 1981, and the trial court entered findings of fact and conclusions of law and a decree of dissolution on December 17, 1981. Walter's motion for reconsideration was heard on March 8, 1982. The trial court entered amended findings of fact and conclusions of law and an amended decree on April 15, 1982. This appeal followed.

The parties' employment and professional training history is relevant to the issues raised in this appeal. As part of our resolution of those issues, we must determine whether the trial court considered each spouse's future earning capacity.

At the time that Walter and Katherine were married, Walter had completed 3½ years of college at the University of Washington and was enlisted in the Army. In 1971, prior to his marriage, he had applied to medical school. After the Fernaus were married, Walter remained in the Army until November 1974. He subsequently returned to the University of Washington to complete his bachelor's degree, and then entered medical school at the same university. He attended medical school from 1976 through 1980. His medical education was financed primarily by benefits received from the Veterans Administration, and by earnings from summer employment, savings, loans, and contributions from Katherine. Walter received his educational benefits from the Veterans Administration until January 1980. In July of 1979, he applied for medical residencies. In May 1981, at the time of trial, he had almost completed his first year of residency in Milwaukee, Wisconsin.

When the Fernaus were married in December 1972, Katherine had obtained a bachelor's degree in nursing and her school nurse service, and was employed. In July 1973, she joined Walter, who was in the Army in North Carolina. Katherine worked full time in North Carolina as a public

health nurse until Walter was discharged in November 1974. After the Fernaus returned to Seattle, in the spring of 1975 Katherine started her graduate training for her master's degree in nursing, which she completed. In 1976, she was enrolled in a physician's assistants training program.

In July 1979, the couple adopted a daughter, Tori Maria. Katherine was working full time, and continued to do so until September 1979, when she reduced her work schedule to half time. From July 1980 to the end of June 1981, she was employed as a health care associate in the School of Public Health at the University of Washington. She began her master's program in public health at the University of Washington in the summer of 1981.

In the amended decree of dissolution, the trial court ordered Walter to pay child support in the amount of $225 per month or 20 percent of his income, whichever was greater, until he entered private medical practice. Upon establishment of his practice, he was then to pay one–twelfth of 20 percent of his annual net income per month as child support; however, in no event was the support to be less than $225 per month. The trial court also awarded maintenance to Katherine in the amount of one–twelfth of 5 percent of Walter's net annual employment income (as defined in the amended decree) per month, for the period that she was enrolled as a full–time graduate student, with a maximum time period of 24 months. The maintenance award contained a condition that maintenance was not to exceed Katherine's living and educational expenses during the 24–month period while she was pursuing her master's degree in public health. Walter was to commence maintenance payments the month he entered private practice or obtained other gainful employment after his medical residency. The court granted custody of the parties' child to Katherine, awarded her the family home, and divided the personal property of the marital community.

Walter first contends that the trial court erred in creating the percentage child support award. Specifically, he argues that the trial court failed to consider the needs of the child

and Katherine's ability to provide financial support. He also contends that it was error not to impose a ceiling on the child support award.

■ To answer Walter's contentions regarding child support, we turn to RCW 26.09.100, which provides:

> In a proceeding for dissolution of marriage, . . . after considering all relevant factors but without regard to marital misconduct, the court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support.

All relevant factors include:

> Age[,] . . . the child's needs, prospects, desires, aptitudes, abilities, and disabilities, and the parents' level of education, standard of living, and current and future resources. Also to be considered is the amount and type of support (*i.e.*, the advantages, educational and otherwise) that the child would have been afforded if his parents had stayed together. *See Puckett v. Puckett,* 76 Wn.2d 703, 458 P.2d 556 (1969).

*Childers v. Childers,* 89 Wn.2d 592, 598, 575 P.2d 201 (1978). If the record establishes that the trial court considered all the relevant factors in fashioning the child support award and that the award was not unreasonable under the circumstances, then the reviewing court will not disturb the child support provisions of the decree. *In re Marriage of Nicholson,* 17 Wn. App. 110, 120, 561 P.2d 1116 (1977).

Recently, in *In re Marriage of Edwards,* 99 Wn.2d 913, 665 P.2d 883 (1983), our Supreme Court held that trial courts in dissolution actions may use escalation clauses as part of child support awards. Specifically, the court held that "escalation clauses which are related to the noncustodial parent's ability to pay and the child's needs are valid." *Edwards,* at 918. We must apply *Edwards* to the present case and examine whether the trial court considered all relevant factors in establishing the child support award.

We first address Walter's contention that the trial court failed to consider Katherine's ability to provide financial support. This assertion is rebutted by the record, which

contains testimony about Katherine's future financial circumstances and reflects the trial court's awareness of those circumstances. The trial court found that Katherine intended to return to graduate school, and that she required child support and maintenance. In the oral opinion, the trial judge explained:

[B]ecause of the difference in income stream of the parties and the potential, even with her education, and she is well educated, I am considering the income stream of both parties. I am also considering that the wife, even with her education, is limited in the number of hours she can work. She can't carry on two jobs or work eighty hours a week, because she does have a child. That does not mean that she has the right to work half time. She does have the right to work half time, but not at the expense of the husband.

These statements demonstrate that the trial court was attempting to balance the needs of both parents. Although the trial judge made these comments in the context of the distribution of the Fernaus' property, they demonstrate that the judge had information about Katherine's earning potential and her needs. Other comments of the trial court indicate that it implicitly considered Katherine's future income in fashioning the decree and findings. For example, the trial court placed a time limit of 24 months on Katherine's maintenance award, after considering her capacity to work in conjunction with the job opportunities for nurses and persons with the graduate degree she intended to obtain. In short, the court had ample evidence of Katherine's financial ability to contribute toward support. We conclude from the record that the court did assess Katherine's ability to contribute when it awarded child support.

Walter also contends that the trial court failed to consider the needs of the child when it determined the amount of child support. The record establishes that the court implicitly evaluated the needs of the child. Indeed, Walter does not contend that the sum of $225 per month is unreasonable and without support in the record. Walter's principal argument is that the percentage increase does not bear

any relationship to the child's future needs and to Katherine's future ability to contribute to the support of the child. To the contrary, as we have explained, the record shows that the trial court weighed the earning potential of the parties, and fashioned a child support award that would enable the minor child to enjoy benefits flowing from Walter's increased income. We have quoted the court's statements regarding Katherine's future earning potential. We refer again to the oral opinion. The court's consideration of Walter's future income by necessity included some evaluation of the child's needs:

> The child support, we are talking about a speculation of what the husband will make someday, and for that reason, he may want to go in the military, he may want to work in a small town out in Nebraska. That's up to him. And I do not think that the Court can mandate that he work in a large city, in a place that would bring in a great deal of income. That is his life and whatever he wishes to do. What I do wish to give is a percentage of his income as child support, and it will be up to him to bring in a modification when he feels that he is paying more than is warrented [sic] for the support of the child.

Furthermore, during the colloquy between the court and counsel when the trial judge was settling the initial findings of fact and conclusions of law and the decree, the judge stated:

> I would like to make it clear that my determination was based on an unknown of what his salary is going to be in the future. The fact is known that he is making very little at the present time because he is a student, but the Court assumes that a graduate medical student, particularly a physician who will then pass his boards, that he will make a substantially greater salary in the future, and for that reason, I had to come up with a type of support that would fit any situation, even after the time he graduates and has passed his boards. It is unknown whether he will go into a small town or a large metropolitan area. So, for that reason, I had to have the support provision be flexible to fit any situation that would occur.

The trial court also heard predictions of Walter's and

Katherine's income potential, although the court declined to place a monetary value on the education degrees of the parties. The court recognized the discrepancy between the future earning capacity of the parties. Income potential and future standard of living are relevant factors to be evaluated, together with "the amount and type of support (*i.e.,* the advantages, educational and otherwise) that the child would have been afforded if [her] parents had stayed together." *Childers v. Childers, supra* at 598.

A more complete record on the issue of the child's present and future needs for support would have been preferable. Unfortunately, at least twice during the proceedings, the trial court curtailed discussion of arrangements for the child, stating, "I'm quite aware of what is necessary for the raising of young children." We do not doubt that the judge had such background; however, we emphasize that child support decisions should be predicated upon a fully developed record. Even though the record is sparse, it shows that the court did consider the relevant factors. Based upon our review of the record and the principles of law discussed above, we conclude that the trial court did not abuse its discretion in determining the initial amount of support and in fashioning an escalation clause providing for future increases.

There is, however, a flaw in the escalation clause which requires us to remand the matter to the trial court for further consideration. In *In re Marriage of Edwards, supra,* the Supreme Court stated:

> We hold that percentage awards are valid so long as the judge properly considers the statutory criteria. In addition, the trial judge *must* set a maximum dollar amount, relating to the children's need, above which the support award cannot rise.

(Italics ours.) *Edwards,* at 915. Notwithstanding subsequent language in the *Edwards* opinion using the word "should" instead of "must", *Edwards,* at 919, the mandate is clear. When a court uses an escalation clause to determine the future child support obligations of the noncusto-

dial parent, *Edwards* requires that the court fix a ceiling which support payments may not exceed.[1] Establishing a ceiling in the present case is particularly justified, as the child is very young and will require support for many years. On remand the parties will be entitled to present evidence and argument concerning the child's future needs. The trial court may then consider these as well as all other relevant factors in imposing the ceiling.

Katherine contends that Walter has waived his right to challenge the trial court's failure to establish a ceiling because he neglected to request one at trial. We disagree. *Edwards* had not been decided at the time of trial, and Walter made his objections to an escalation clause well known to the trial court. Furthermore, we disagree with Katherine's contention that Walter should be ordered by this court to bear the costs, including her attorneys' fees, for further consideration of this matter in the trial court. If an award of fees is appropriate, that can best be determined by the Superior Court on remand.

Walter next objects to the trial court's award of maintenance, alleging that the award was improper in view of Katherine's advanced education and experience. Among the relevant factors considered by the trial court when awarding maintenance in the present case was Katherine's financial assistance in Walter's professional education. In *In re Marriage of Washburn,* 101 Wn.2d 168, 677 P.2d 152 (1984), our Supreme Court declared that the supporting spouse's contribution is a relevant factor which courts must consider in designing a maintenance award or in dividing the spouses' property.

---

[1] The court in *In re Marriage of Edwards,* 99 Wn.2d 913, 665 P.2d 883 (1983), remarked that its interpretation of the child support statute "may require that trial judges be more sympathetic to pleas of substantial change of positions in granting modification requests." *Edwards,* at 919. Escalation clauses are based on the assumptions that the child's needs increase and the parent's ability to pay also increases. "If the noncustodial parent can later refute these assumptions or if the custodial parent's ability to pay has substantially increased, modification should be granted." *Edwards,* at 919–20.

When a person supports a spouse through professional school in the mutual expectation of future financial benefit to the community, but the marriage ends before that benefit can be realized, that circumstance is a *"relevant factor" which must be considered in making a fair and equitable division of property and liabilities pursuant to RCW 26.09.080, or a just award of maintenance pursuant to RCW 26.09.090.* A professional degree confers high earning potential upon the holder. The student spouse should not walk away with this valuable advantage without compensating the person who helped him or her obtain it.

(Italics ours.) *Washburn,* at 178. The "compensation may be effected through property division, maintenance, or a combination of both." *Washburn,* at 183–84. Walter's argument that Katherine had the capacity to support herself without additional education or training and therefore was not entitled to an award of maintenance does not defeat the trial court's action here. The capacity of the spouse receiving maintenance to support him– or herself is only one factor to be considered in fixing a maintenance award. RCW 26.09.090(1)(a); *Washburn,* at 178–79. The court must consider all relevant factors, including the standard of living established during the marriage, RCW 26.09.090(1)(c), and the duration of the marriage, RCW 26.09.090(1)(d). Moreover, *Washburn* points out that the factors listed in the statute are not exclusive. The *Washburn* court described maintenance as a "flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." *Washburn,* at 179. In fashioning the maintenance award,

[t]he trial court may consider the supporting spouse's contribution and exercise its broad discretion to grant maintenance, thereby in effect allowing the supporting spouse to share, temporarily, in the lifestyle which he or she helped the student spouse to attain.

(Footnote omitted.) *Washburn,* at 179. The court noted that, should the student spouse abandon his profession or should his ability to pay be substantially impaired, he could seek modification under RCW 26.09.170. *Washburn,* at 179

n.3. Thus, in *Washburn* and in *In re Marriage of Edwards, supra,* the court suggested enhanced reliance on the modification provisions of RCW Title 26 to avoid any potential future injustice when there is a change of circumstances which the parties could not reasonably have foreseen at the time the decree was entered. *In re Marriage of Edwards, supra* at 919–20.

The *Washburn* court directs the trial court to consider four factors in determining the amount of compensation for the supporting spouse's contribution to the student spouse's education. These are: (1) the amount of community funds expended, (2) the amount which the community would have earned, (3) opportunities that the supporting spouse gave up, and (4) the future earning prospects of each spouse. It is clear from our review of the record that the trial court did consider evidence in each of these categories. Katherine's ability to support herself, her desire to obtain a master's degree in public health, and her contribution to her husband's career were part of the trial court's balance. Moreover, the *Washburn* court permits the trial court to "allow the supporting spouse to obtain an equal educational opportunity at the student spouse's expense. *See Childers v. Childers,* 15 Wn. App. 792, 552 P.2d 83 (1976), *aff'd in relevant part,* 89 Wn.2d 592, 575 P.2d 201 (1978)." *Washburn,* at 181 n.4. Here, the trial judge's remarks in her oral opinion indicate that, although she was without the benefit of *Washburn,* an equal educational opportunity is precisely what she had in mind: "[T]he wife did help the husband in his education and I am going to give her an equal opportunity to finish her master's degree." The award of maintenance under these circumstances is not unreasonable, nor does it constitute an abuse of discretion.

▮ Walter next contends that the trial court's division of property was unfair and an abuse of discretion. Factors to be considered in dividing property are listed in RCW 26.09.080:

In a proceeding for dissolution of the marriage, . . . the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

Walter has not shown that the trial court manifestly abused its discretion in dividing the property. The court awarded the family home to Katherine, who has custody of the child. Katherine wished to stay in the area, while Walter had moved and indicated he intended to pursue his training and practice elsewhere. In addition, Walter has the capacity to earn a substantially larger income than Katherine will earn, and, during the marriage, she assisted him in pursuing a professional education which resulted in his enhanced earning capacity. These considerations are relevant under the statute and *In re Marriage of Washburn, supra.* The trial court properly weighed this evidence, as it was required to do, in determining maintenance and in dividing the property.

As part of the property division, the court awarded a balancing judgment to Walter in the amount of $12,000, plus 10 percent interest per year, secured by the house. In her cross appeal, Katherine contends that the balancing judgment constituted an abuse of discretion. We disagree, considering the amount and value of the property awarded to Katherine, together with the maintenance provisions in her favor. Indeed, a review of the property of the parties reveals that the only assets of substantial value were the family home, valued at $70,000 less 10 percent for costs of sale, and a 1959 Mercedes Benz automobile, valued at

$10,000. The remaining items were primarily home furnishings and appliances, and the valuation of such property is difficult at best. There is very little community indebtedness apart from the encumbrance on the family home. Under the terms of the amended decree, this debt is the responsibility of Katherine. We conclude that the trial court did not abuse its discretion in dividing and distributing the property of the parties.

█ In her cross appeal, Katherine argues first that the trial court was required to explicitly determine the value of Walter's medical degree, training, and increased earning capacity, and to award a portion of that amount to her with provisions for payment. She argues that the degree should be disposed of as if it were property, analogous to a home, business, or pension. These contentions are not meritorious. As we stated above, the trial court may compensate a spouse who has assisted the student spouse in obtaining his or her professional degree, and the compensation may be achieved through property division, maintenance, or a combination of these. *In re Marriage of Washburn, supra* at 183. Here, the trial court chose the option set forth in footnote 4 of the *Washburn* opinion: the court allowed Katherine to obtain an equal educational opportunity with financial support from Walter. *Washburn* does not require the trial court to set a specific monetary amount on the professional degree itself; rather the court directs the trial court to "compensate" the supporting spouse through the variety of options available, which we have discussed.

Furthermore, while it was proper for the court to consider Katherine's contribution and to compensate her, the circumstances in this case militate against remanding for further consideration of the value of Walter's education. First, although the wife did contribute to the parties' income during the time that the husband was in medical school, the finances for his education came primarily from sources for which he was and is the responsible party, *i.e.,* his veteran's benefits and student loans. Second, the spouses supported each other while they continued their

education. Katherine started and completed her master's degree while Walter was in medical school. Walter actually completed his residency, which was a part of his training, after the parties had separated. In light of these facts, the court's compensation to Katherine was certainly reasonable.

At trial, the parties agreed that Katherine's tort claims against Walter for outrage and intentional infliction of emotional distress were not a proper part of the dissolution proceeding, and were to be reserved to Katherine. This was accomplished in part in the original findings of fact and conclusions of law, but was omitted in the amended findings and conclusions. The parties are not in dispute on this issue, and the findings and decree may be modified to comport with the parties' stipulation.

■ The trial court ruled that the parties were to bear their own legal expenses. Katherine contends that this was error in view of Walter's increased earning potential. We disagree. The trial court has broad discretion in determining whether to award attorney's fees and costs under RCW 26.09.140. In a dissolution action, the trial court's award of attorney's fees will not be reversed on appeal unless it is untenable or manifestly unreasonable. *Valley v. Selfridge,* 30 Wn. App. 908, 918, 639 P.2d 225 (1982). Here, the trial court took into consideration Walter's income and financial ability at the time the superior court proceedings were concluded. We find no abuse of discretion in the trial court's ruling on attorney's fees.

Katherine also argues that Walter's appeal is frivolous, and therefore, he should be required to pay her legal expenses on appeal. We reject this argument too. In awarding attorney's fees on appeal, the court should examine "the arguable merit of the issues on appeal and the financial resources of the respective parties." *In re Thompson,* 34 Wn. App. 643, 648, 663 P.2d 164 (1983); *In re Marriage of Edwards,* 99 Wn.2d 913, 920, 665 P.2d 883 (1983). Our resolution of this appeal shows that the issues raised by Walter were not frivolous.

Finally, we address Walter's motion to strike portions of Katherine's supplemental brief. Katherine has attached Walter's 1983 income tax return to this brief. She attempts to use this information to rebut his testimony at trial with respect to his anticipated future income. Katherine also offers this information to justify her request that, as a consequence of his increased earning capacity, she should be awarded a specific sum to compensate her for her assistance in helping him obtain his medical degree. The information in the 1983 tax return was not before the trial court and is not a part of this record. Accordingly, Walter's motion to strike is granted.

The provisions of the amended decree establishing child support, providing for a percentage increase, awarding maintenance, and dividing the property of the parties are affirmed. The provision of the decree which allows an open-ended escalation clause is remanded to the trial court solely for the purpose of fixing an appropriate ceiling. When addressing this issue, the trial court is to follow the mandate set forth in *In re Marriage of Edwards*, 99 Wn.2d 913, 665 P.2d 883 (1983).

CORBETT, A.C.J., and CALLOW, J., concur.