FILED
COURT OF APPEALS
DIVISION II

2014 JAN -7 AM 10: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of: | No. 43168-8-II |
| AMANDA STARR MOUNT, | |
| Respondent/Cross Appellant, | |
| v. | UNPUBLISHED OPINION |
| JOHN MERRITT MOUNT, | |
| Appellant/Cross Respondent. | |

PENOYAR, J. — Amanda Mount filed for dissolution of her long-term marriage to John Merritt Mount. In light of Merritt's[1] significant separate property and his greater monthly income, the trial court awarded Amanda the majority of the community property as well as spousal maintenance. The trial court also ordered Merritt to pay Amanda's student loan debt and part of her attorney fees. Merritt appeals, arguing that the trial court erred when it (1) awarded Amanda maintenance, (2) denied his motion to list the family house for sale, and (3) ordered him to pay Amanda's $12,452 student loan. Both parties appeal the trial court's attorney fee award and request attorney fees on appeal. The trial court reasonably exercised its discretion when it awarded Amanda maintenance and ordered Merritt to pay Amanda's student loans because Merritt's income is twice Amanda's income, Merritt has more separate property, and their marriage was long term. Additionally, the trial court did not err when it denied Merritt's motion to list the house for sale because Merritt failed to show that he could not maintain it, the housing market was down, and the parties could not work together to sell it. Finally, we affirm the trial court's attorney fee award but decline to award either party attorney fees on appeal.

---

[1] Because the parties share the same last name, we refer to them by their preferred first names; we intend no disrespect.

FACTS

Amanda and Merritt were married in 1988. Amanda filed a dissolution petition on July 15, 2010. Both parties are in their mid-to-late fifties and currently employed. Amanda earns $3,894 per month and Merritt earns $7,634 per month. Amanda recently received a three percent pay cut while Merritt received a $10,000 raise.

Merritt was diagnosed with prostate cancer before the dissolution trial. At the time of the trial, he was treating his cancer through diet and he stated that it was not impacting his work.

At the conclusion of the trial, the court awarded 75 percent of the community property to Amanda and the remaining 25 percent to Merritt.[2] The trial court awarded Merritt the proceeds from his mother's and his friend's estates as his separate property. The trial court awarded the house to Merritt and ordered him to pay Amanda 75 percent of its equity. The trial court also ordered him to pay $12,452 of Amanda's graduate school loans and awarded her $1,500 a month in maintenance until Merritt can no longer work or retires. Finally, the trial court ordered Merritt to pay $7,000 of Amanda's attorney fees.

Merritt filed a motion for reconsideration. He argued, among other things, that the trial court erred by characterizing one of his retirement accounts as community property, by awarding $1,500 per month in maintenance to Amanda, and by incorrectly calculating the amount of the inheritances. He also requested that the trial court allow him to list the family house for sale. The trial court denied the motion for reconsideration, except as to the retirement account, which it re-characterized as Merritt's separate property. The court denied his motion to list the family house.

---

[2] Merritt proposed this 75/25 division, depending on the trial court's maintenance award.

Amanda also filed a motion for reconsideration, asking the trial court to award her additional attorney fees for responding to Merritt's post-trial motions. The trial court denied Amanda's motion. Merritt appeals. Amanda cross appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

A trial court has broad discretion to distribute property and award maintenance during a dissolution proceeding. *In re Marriage of Olivares*, 69 Wn. App. 324, 328, 848 P.2d 1281 (1993), *overruled on other grounds by In re Estate of Borghi*, 167 Wn.2d 480, 219 P.3d 932 (2009)); *In re Marriage of Zahm*, 138 Wn.2d 213, 226, 978 P.2d 498 (1999). Accordingly, we review the trial court's decisions regarding property distribution and maintenance to determine whether they are manifestly unreasonable or based on untenable grounds or reasons. *Olivares*, 69 Wn. App. at 328. We will not retry the facts on appeal and will accept findings of fact as verities if they are supported by substantial evidence in the record. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991).

### II. MAINTENANCE

Merritt first argues that the trial court erred when it awarded Amanda maintenance. The trial court based its award on the differences in the parties' salaries, the amount of separate property, and the length of their marriage. We affirm because the trial court's award was just and equitable in light of the relevant factors.

RCW 26.09.090(1) requires that the amount and duration of the maintenance award be just in light of the relevant factors. It provides a nonexhaustive list of factors:

(a) The financial resources of the party seeking maintenance . . . ;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage . . . ;

(d) The duration of the marriage . . . ;

(e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and

(f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090(1). Maintenance is not merely a means of providing bare necessities; rather, it is a flexible tool by which the parties' standards of living may be equalized for an appropriate period of time. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984) (citing RCW 26.09.090(1)(c), (d)).

Here, the trial court considered all of the factors under RCW 26.09.090 in awarding Amanda maintenance. The court found the following specific factors particularly significant: (1) Merritt's monthly income is about twice the amount of Amanda's monthly income, (2) the parties had a long-term marriage, (3) that although Merritt failed to provide evidence regarding his cancer prognosis or treatment, the court made maintenance modifiable based on his health and ability to continue working, (4) Merritt will receive a "significant amount" of separate property and Amanda will not, and (5) both parties are in their mid-to-late fifties and currently able to work. Clerk's Papers (CP) at 133.

Merritt argues that the trial court made several errors when it awarded Amanda maintenance. First, he contends that the disparity between the parties' monthly incomes is less

than it appears considering Amanda's potential for a longer "work life." Appellant's Br. at 29. But the trial court factored Amanda's potentially longer work life into its decision: it specifically considered the parties' ages and ability to continue working, and it made the maintenance subject to modification after Merritt retires. We see no error on this issue.

Second, Merritt argues that the trial court failed to consider the impact of his cancer. The trial court considered Merritt's cancer[3] but found that he failed to provide evidence regarding his prognosis or treatment. This finding is supported by the record.

At the hearing, Merritt testified that he was not currently undergoing treatment and that his cancer had not yet impacted his work. In his motion for reconsideration, Merritt included more information regarding his diagnosis. He stated his treatment options, noting that they had possible side effects and that he currently had limited sick leave. However, he did not include information about which treatment he was opting for or how treatment would affect his finances or ability to work. Nonetheless, the trial court concluded that maintenance could be modified based on Merritt's health and ability to work. Substantial evidence supports the court's determination.

Third, Merritt asserts that the trial court failed to properly weigh Amanda's education and ability to support herself. The receiving spouse's capacity for self-support does not automatically preclude a maintenance award. *Washburn*, 101 Wn.2d at 178. Instead, the ability of the spouse seeking maintenance to independently meet her needs is only one of the factors the court considers. *Washburn*, 101 Wn.2d at 178-79. Here, the court found that Amanda had the

---

[3] In his brief, Merritt argues, "Nowhere in its multiple decisions does the trial court indicate that it considered any of [the evidence regarding his cancer] or even that it read the medical records that had been submitted." Appellant's Br. at 30. But the trial court stated that it considered all of the information Merritt submitted, including the declarations filed with his motion for reconsideration, and his medical records were never admitted into evidence.

ability to work, but it also found that Merritt's monthly income was greater than Amanda's, Merritt had more separate property than Amanda, and their marriage was long term—over 20 years. The trial court did not err when it awarded Amanda maintenance under these circumstances where her ability to support herself is only one factor in the analysis.

Fourth, Merritt argues that the trial court inaccurately valued his separate property. In its oral ruling, the trial court stated that Merritt was going to be inheriting "somewhere in the nature of up to $325,000" from his friend and "close to $200,000" from his mother. CP at 247. There is evidence in the record to support both of these figures. The initial evidence presented regarding Merritt's friend's estate was a certified copy of his friend's will, which provided that Merritt will receive 10 percent of the $3.2 million estate. Although Merritt offered evidence from the estate's attorney estimating the value of the estate at $2.2 million, he delayed delivering this information to Amanda and the court and he admitted that it was only an estimate. On appeal, Merritt relies on the additional information about the estate filed with his motion for reconsideration. A trial court has discretion to consider or not consider evidence submitted with a motion for reconsideration. *Chen v. State*, 86 Wn. App. 183, 192, 937 P.2d 612 (1997). Here, the trial court expressed frustration at Merritt's delay in presenting information about the estate and refused to reconsider its initial findings. The trial court acted within its discretion to not consider evidence that Merritt had access to before the initial hearing.

The evidence also supports the trial court's estimate regarding Merritt's mother's estate. Merritt testified that he would be receiving between $180,000 and $190,000 from his mother's estate. He purposefully delayed closing her estate until after the divorce proceeding, which forced the court to estimate his inheritance rather than using evidence of what he actually received. Even if these estimates prove to be too high, Merritt still received more separate

property than Amanda—he was also awarded an $83,000 retirement account as his separate property—and he has not shown that receiving a lower figure than the court's estimate would affect his ability to pay maintenance.

Finally, Merritt contends that the trial court erred when it determined that it had an obligation to place the parties in equal financial positions. But one of the goals of maintenance is to equalize the parties' standards of living. *Washburn*, 101 Wn.2d at 179. Moreover, the trial court considered all of the statutory factors, and there is no indication that the court gave improper weight to the parties' standard of living. The trial court stated that, in addition to the parties' standard of living during the marriage, it considered the parties' incomes, the length of the marriage, the parties' separate property, Merritt's health, and the parties' ages and employment. The trial court's analysis was not unreasonable or based on untenable grounds, and we affirm.

III.    HOUSE

Merritt next argues that the trial court erred when it denied his motion to list the family house for sale. Merritt did not present evidence at trial that he was incapable of maintaining the house. Further, the housing market was down and the parties were not able to work together to list the house for sale; accordingly, the trial court did not err when it awarded Merritt the house and denied his motion to list it for sale.

At trial, Merritt testified that he was currently living in the house because Amanda thought it would be "less disruptive" for him while he was receiving his cancer treatment. Report of Proceedings (RP) at 69. He said that he would be willing to sell the house, but he would also be willing to keep it or let Amanda keep it. Amanda testified that she would be willing to list the house for sale, but the parties were not able to agree on how much the house

7

was worth. Amanda took the position that the house was worth about $360,000 to $300,000 and Merritt took the position that the house was worth about $250,000.

The trial court awarded Merritt the house, which it valued at about $280,000, and ordered him to pay Amanda 75 percent of the equity. Amanda opposed the post-trial motion to list the house for sale. The trial court determined that it would be unreasonable to force the sale of the house when the housing market is down and when the parties had such different ideas of the house's value and had already failed to come to an agreement about selling the house outside of court. It affirmed its award to Merritt, finding that he was in a better position to maintain the house.

Merritt challenges the trial court's finding that he is in a better position to maintain the house. He argues that his health will make maintenance burdensome. At the time of the trial, Merritt had been living in and maintaining the house. Although he testified that he would eventually have to undergo treatment, he did not provide the court with specific information regarding his chosen treatment and its effects. He also stated that he was delaying treatment and that his diagnosis had not yet impacted his ability to work. Substantial evidence supports the trial court's finding that Merritt could maintain the house.

Moreover, Merritt acknowledged the poor state of the real estate market and the record establishes that the parties could not agree on listing the house. The trial court did not err when it denied Merritt's motion to list the house. *See High v. High*, 41 Wn.2d 811, 823, 252 P.2d 272 (1953) (finding that it was manifestly unreasonable for the trial court to force the sale of property when the value was down but could increase in the future).[4]

---

[4] Hopefully, the generally improving housing market will benefit the parties here, but we have no information on the record about that.

8

IV.   STUDENT LOANS

Finally, Merritt argues that the trial court erred when it ordered him to pay a portion of Amanda's student loans. He contends that the decision was unfair because it further reduced his share of the property. But the trial court does not have to equally distribute property and debts, and, here, the distribution was just and equitable considering the length and circumstances of the marriage and Merritt's financial resources.

The trial court must consider the following when distributing personal property and debts in a dissolution proceeding: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) each spouses' economic circumstances at the time of the property division. RCW 26.09.080. The trial court is not required to divide property equally so long as the division is just and equitable in light of the relevant factors. *In re Marriage of Mansour*, 126 Wn. App. 1, 14, 106 P.3d 768 (2004). The trial court may consider equal education opportunities when distributing property. *In re Marriage of Fernau*, 39 Wn. App. 695, 705, 694 P.2d 1092 (1984) (quoting *Washburn*, 101 Wn.2d at 181 n.4).

The trial court ordered Merritt to pay Amanda's $12,452 student loan balance because (1) he has greater financial resources (2) and it was "fair" for Amanda to have the same opportunity as Merritt, who also received a graduate degree during the marriage. CP at 252. This decision is

not unreasonable where the parties had a long term marriage, Merritt has more separate property, and Amanda worked to help cover living expenses while Merritt was earning his graduate degree. We affirm.[5]

V.    ATTORNEY FEES

Merritt argues that the trial court erred when it awarded Amanda $7,000 in attorney fees. Amanda argues that the trial court erred when it denied her motion for reconsideration requesting additional attorney fees.   The trial court did not err when it awarded Amanda attorney fees because she demonstrated a financial need and Merritt had the ability to pay.  The trial court also properly exercised its discretion when it denied Amanda's motion for reconsideration.

We review a trial court's grant or denial of attorney fees and a motion for reconsideration to determine if the decision was manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Freeman*, 169 Wn.2d 664, 676, 239 P.3d 557 (2010); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).  In a dissolution proceeding, courts have discretion to order one party to pay the other party's costs and attorney fees.  RCW 26.09.140.  When awarding attorney fees, courts examine the arguable merit of the issues and the parties' financial resources. *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990).

Here, the trial court ordered Merritt to pay $7,000 of Amanda's attorney fees, based on her need and his ability to pay.  Amanda filed a motion for reconsideration requesting more fees after Merritt appealed to this court.  The trial court denied her motion, reiterating that its award

---

[5] Merritt also argues that the trial court erred by suggesting that he had no authority to unilaterally use community funds to reimburse their son and fund their daughter's college account.  But Merritt admits that it is "unclear" what impact this had on the trial court's decision. Appellant's Br. at 41.   And the trial court did not rely on Merritt's actions regarding the children's accounts to justify any of its decisions.

10

was based on the parties' respective financial positions and noting that this was the third motion for reconsideration and an appeal was already pending.

As we discuss above, based on their relative incomes and separate property, Merritt had the ability to pay and Amanda had the need. The trial court did not err when it awarded her attorney fees. Additionally, the trial court did not, as Amanda argues, refuse to exercise its discretion to reconsider the amount of the fees. The trial court did state that its decision on this motion would likely not matter in light of the pending appeal, but it made a ruling denying reconsideration. We affirm the trial court's attorney fee award.

Both parties request attorney fees on appeal. The trial court's attorney fee award adequately addressed the disparities between the parties' incomes. We decline to award further fees.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Maxa, J.

Schindler, J.

11