# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Marriage of: | No. 84642-6-I |
| ARIF JAMAL, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| GULLBANO KAHN, | |
| Respondent. | |

ANDRUS, C.J. — Arif Jamal appeals the trial court's orders awarding Gullbano Kahn child support, spousal maintenance, and attorney fees following the contested dissolution of their marriage. We affirm the trial court's refusal to grant Jamal a deviation in setting his child support obligation and its award of spousal maintenance to Khan for the first two years following the dissolution. But we reverse the attorney fee award because the trial court's finding that Jamal has the financial ability to pay that award is not supported by the record.

<u>FACTS</u>

Arif Jamal and Gullbano Khan were married in 2012 and have two children. Jamal received his master's degree in business administration from the University of Washington and has worked at Kaiser Permanente for the last five years. Khan

Citations and pin cites are based on the Westlaw online version of the cited material.

was a stay-at-home mother for the duration of the marriage, but after the couple separated, she began working as a vault teller at Moneytree. Jamal's gross monthly income totals approximately $9,353.37 per month, while Khan's is $3,120.00.

Khan filed for dissolution in February 2021 and the trial court entered temporary orders under which the children resided primarily with Khan and Jamal paid Kahn $1,400 per month in spousal maintenance and $1,607 in child support.

In December 2021, the parties mediated their disputes, resulting in a signed agreement pursuant to CR 2A. The agreement set out a final parenting plan, under which the children reside equally with both parents and Jamal, who works from home, will be responsible for childcare during Khan's residential time while she is at work. The agreement also set out a division of property and debts, which included a $2,000 equalization payment from Jamal to Khan. The parties also agreed to resolve the remaining disputes regarding child support, spousal maintenance, and attorney fees at a trial by affidavit.

At trial, Khan requested combined child support and spousal maintenance payments of $2,750 per month for the first two years and $1,775 in child support thereafter. She also requested that Jamal pay a portion of the $25,000 she had incurred in attorney fees. Jamal argued that the court should award no spousal maintenance and requested a deviation below the standard child support calculations based on the fact that Jamal will likely spend more time with the children than Khan will because of her work schedule.

The trial court declined Jamal's deviation request and applied the standard child support calculations. It also awarded Khan monthly spousal maintenance of

$1,250 during the first 12 months after their dissolution and $750 during the second 12-month period. The court also awarded Khan $10,000 in attorney fees. Jamal appeals.

ANALYSIS

Child Support

Jamal challenges the trial court's child support order on two grounds. He argues, first, that the court erred in declining to apply a deviation from the standard child support calculations based on Jamal's provision of childcare while Khan works and, second, that the trial court erred in failing to enter written findings to support the denial of Jamal's request for a deviation. We reject both arguments.

We review a trial court's order of child support for abuse of discretion. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The legislature's stated intent in enacting the child support statute, chapter 26.19 RCW, is "to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living." RCW 26.19.001. The legislature intended child support obligations to be "equitably apportioned between the parents." *Id.*

When entering an order of child support, the trial court begins by setting the basic child support obligation, determined by the child support table contained in RCW 26.19.020. RCW 26.19.011; *State ex rel. M.M.G. v.* Graham, 159 Wn.2d 623, 627, 152 P.3d 1005 (2007). The standard calculation is the presumptive amount of child support owed by the obligor parent to the obligee parent. RCW 26.19.011(8); *Graham*, 159 Wn.2d at 627. The trial court then allocates the child support obligation between the parents based on their share of the combined

monthly income. RCW 26.19.080(1). The trial court has the discretion to deviate from the standard calculation based on factors such as the parents' income and expenses, obligations to children from other relationships, and the children's residential schedule. RCW 26.19.075(1).

It is undisputed that the trial court appropriately determined the parents' net monthly incomes and the standard support obligation for the two children, and correctly allocated the basic support obligation between the parents for the first three years following the dissolution. Jamal does not challenge any of these calculations, but instead contends the court erred in rejecting his request for a deviation from the presumptive amount owed based on the fact that he will have residential time with their children for more than half the time. At trial, Khan opposed this deviation request, arguing that, per her financial declaration, her monthly expenses already exceed her income, and reducing child support would leave her with insufficient funds to meet her household expenses.

The trial court recognized that under the agreed parenting plan, Khan and Jamal will share residential time with the children equally and that Jamal may provide daycare for Khan when she has to work during her residential time. The court nevertheless denied the requested deviation, finding that "based on the record before me and due to the income disparities of the parties, the Court's finding [is] that a deviation from [the] standard calculation would [leave] Ms. Khan with insufficient funds."

This finding is supported by substantial evidence in the record and is not an abuse of discretion. This court and our Supreme Court have repeatedly held that the standard calculation applies where the parents share equal residential time.

- 4 -

*Graham*, 159 Wn.2d at 636; *In re Marriage of Schnurman*, 178 Wn. App. 634, 643, 316 P.3d 514 (2013). Jamal seeks to distinguish these cases on the fact that, although the parenting plan provides equal residency with each parent, he will be providing additional child care based on Khan's work schedule and in actuality will have the children for over fifty percent of the time. But he provides no authority for the argument that the standard schedules contained in chapter 26.19 RCW are inappropriate in such circumstances.

More importantly, the record supports Khan's argument that a deviation below standard child support calculations would leave her with insufficient funds to meet her household expenses. Below, Khan claimed $5,645.00 in monthly expenses, although this sum was premised on her obtaining a two-bedroom apartment at some point in the future. Her actual monthly expenses, assuming she and the children remained in a one-bedroom apartment, were $4,961. Her gross income, per the trial court's findings, is $3,120 a month. Without spousal maintenance, her net income is $2,640.83. With a transfer payment from Jamal of $1,565.96, Khan will have a total household income of only $4,206.79, approximately $750 less than she needs to meet her monthly household expenses. While it is possible, as Jamal argued below, that Khan's financial declaration overstated her monthly expenses, even assuming Jamal's assessment of Khan's expenses is correct, her income and the standard child support still remain below her monthly expenses by some $100. The trial court thus did not err in finding that a deviation below the standard child support calculations would leave Khan with insufficient funds to cover her household expenses for the children.

Jamal also argues that the trial court erred in failing to enter findings to support its denial of his request for a deviation. The statute does require trial courts to enter written findings of fact supporting the reasons for any deviation or for the denial of a party's request for deviation. RCW 26.19.075(3). The lack of specific written findings is not fatal; in the absence of such findings, appellate courts may look to the trial court's oral rulings to determine the basis for a trial court's decision to grant or deny a request for deviation. *Booth*, 114 Wn.2d at 777.

The trial court clearly articulated its reasoning for denying Jamal's request for a deviation in this case, stating that the income disparity between the parties is such that "a deviation from [the] standard calculation would [leave] Ms. Khan with insufficient funds." This oral ruling provides the court with sufficient explanation for the denial of Jamal's requested child support deviation.

We conclude the trial court did not abuse its discretion in denying Jamal a downward deviation in setting his child support obligation.

Spousal Maintenance

Jamal also challenges the trial court's award of spousal maintenance, arguing that it is inequitable and puts Khan in a better financial position. Although the maintenance award does result in a disparity in monthly income in Khan's favor for the first year post-dissolution, we do not conclude this was an abuse of discretion.

Trial courts have broad discretion in fashioning spousal maintenance awards. *In re Marriage of Bulicek*, 59 Wn. App. 630, 633-34, 800 P.2d 394 (1990). RCW 26.09.090(1) allows courts to grant a maintenance order for either spouse "in such amounts and for such periods of time as the court deems just, without

regard to misconduct." The statute sets out several nonexclusive factors that trial courts must consider when deciding whether to award spousal maintenance:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

> (c) The standard of living established during the marriage or domestic partnership;

> (d) The duration of the marriage or domestic partnership;

> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

Courts are "governed strongly by the need of one party and the ability of the other party to pay an award." *In re Marriage of Foley*, 84 Wn. App. 839, 845-46, 930 P.2d 929 (1997). Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019).

The trial court found that spousal support should be ordered because "[t]here is a significant difference of income between the parties. [Khan] has a need for spousal maintenance and [Jamal] is able to pay spousal support for a transitional period of time as [Khan] re-establishes herself in the work force and

increases her income earning capacity." The record reflects that the trial court appropriately considered the substantial disparity in wages and earning potential between the two parties. At the time of trial, Khan earned $36,000 a year while Jamal's annual income was $112,000. The court noted that Khan's job was "very low-paying" because of the time she spent out of the workforce.

The court explained that it was looking "at the need of the spouse requesting maintenance and the ability of the other spouse to pay." The court also considered that:

> Khan had been staying home for at least 9, 10 years shortly after the parties were married. And then they had the children and she was kind of the stay-at-home mom and housewife, basically, taking care of the issues of the home. She does have a degree. The degree is about 15 years old in an area of graphic design, which, I understand from what's been presented, she does not have experience to put onto a resume to probably get a graphic design job at this point in time.

The court accordingly awarded spousal maintenance for two years: $1,250 per month for the first 12 months and $750 per month for the following twelve months. The court stated that this maintenance award would likely give Khan the opportunity to increase her salary over the following two years and reduce the income disparity between the two.

The record also supports the trial court's finding that Khan has a financial need for spousal maintenance. With net monthly income of $2,640.83 and child support from Jamal (assuming no maintenance) of $1,565.96, Khan would have a total household income of only $4,206.79, with monthly expenses of $5,645. Without spousal maintenance, Khan's income, combined with child support, leaves her with a fairly significant gap in income to meet her monthly expenses.

Considering Jamal's ability to pay the maintenance award, Jamal identified $5,259.91 in monthly living and debt expenses.[1] Jamal's net monthly income is $7,173.58.[2] According to the child support worksheets, when attributing $1,250 in spousal support to Khan, Jamal's child support transfer payment is $1,285.94, increasing his monthly expenses to $6,545.85, which leaves him $627.73 with which to pay a spousal maintenance award of $1,250. Under this same scenario, Khan will have $2,640.83 in her own income, $1,285.94 in child support, and $1,250 in spousal maintenance, for total monthly income of $5,176.77, still below her declared monthly expenses of $5,645.

Although Jamal contends on appeal that Khan overstated her monthly expenses in a financial declaration, the trial court made no finding to this effect. The trial court's spousal maintenance award thus placed both parents in approximately the same position with their monthly expenses slightly exceeding their monthly income. The court recognized that the dissolution will inevitably leave both parties with a deficit and require that they "tighten their belt[s]."

In addition, the trial court had evidence before it that Jamal has a line of credit with a credit union with which to cover a portion of the expense of spousal maintenance for a short period of time. In light of Jamal's ability to obtain financing for his debt obligations and his substantially higher income, we cannot say that the trial court abused its discretion in entering a maintenance order that places a

---

[1] Jamal also has approximately $70,000 in student debt but that debt is currently in forbearance status.

[2] There is an inconsistency between the trial court's child support order, which finds Jamal's net monthly income as $7,173.58, and the child support worksheets, which indicate his monthly net income is $7,017.31. We cannot identify the source of this discrepancy.

higher financial burden on Jamal for a short transitional period of time as Khan works to increase her earning capacity.

We further note that the resulting income gap in Khan's favor will last only one year; during the second year, with $750 in spousal maintenance, Jamal's child support transfer payment will be $1,397.95, making his monthly expenses $6,657.86, leaving him with $515.72 with which to pay spousal maintenance of $750. That same year, Khan will have combined income, child support and spousal maintenance of $4,788.78, and will run a much larger deficit of several hundred dollars.

Jamal also argues that the trial court abused its discretion by failing to consider the parties' respective financial resources and obligations, as required by RCW 26.09.090(1)(a) and (f). This contention is belied by the record.

Jamal specifically contends that the trial court failed to consider the substantial sum Khan possessed in a checking account—which she acquired as a gift from her family, a $2,000 equalization payment she received in the division of property, and Jamal's debt obligations resulting from car, credit card, and loan payments. But the record establishes that the court was well-aware of Khan's assets and Jamal's debt obligations and appropriately considered these factors before entering the maintenance order. The court engaged in an extensive colloquy with the parties about the assets in Khan's bank account and the amount of student loans owed by Jamal. That the court did not refer to each specific asset or debt obligation in entering the maintenance order does not mean that it abused its discretion or failed to consider those factors. The trial court need not make

specific factual findings with regard to each of RCW 26.09.090's factors.  *Anthony*, 9 Wn. App. 2d at 564.

The record indicates that the court appropriately considered all relevant factors, including the parties' financial assets, obligations, financial need, and ability to pay and did not abuse its discretion in awarding spousal maintenance.

<u>Attorney Fees</u>

Jamal also appeals the trial court's award of $10,000 in attorney fees to Khan.  RCW 26.09.140 provides:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith.

Trial courts have great discretion in awarding attorney fees under RCW 26.09.140.  *In re Marriage of Fernau*, 39 Wn. App. 695, 708, 694 P.2d 1092 (1984). However, a party relying on RCW 26.09.140 "must make a showing of need and of the other's ability to pay fees in order to prevail."  *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 808, 929 P.2d 1204 (1997).  "Need in this sense does not necessarily mean destitution or poverty but it does mean an absence of funds and a lack of ability to get them without extreme hardship."  *Coons v. Coons*, 6 Wn. App. 123, 126, 491 P.2d 1333 (1971).  Generally, a spouse is not entitled to the costs of their litigation when they are financially able to pay their own attorney fees. *Roberts v. Roberts*, 69 Wn.2d 863, 870, 420 P.2d 864 (1966).  The mere fact that one spouse makes substantially more than the other in income may establish that spouse's ability to pay, but does not establish that the spouse requesting an award of fees is without resources sufficient to properly prepare and conduct his or her

suit.  *Coons*, 6 Wn. App. at 128.  An award of attorney fees that is not supported by findings regarding the parties' financial need or ability to pay requires reversal. *In re Marriage of Scanlon and Witrak*, 109 Wn. App. 167, 181, 34 P.3d 877 (2001).

During the hearing, the trial court explained its $10,000 award for Khan as follows:

> But when I'm looking at the attorney fees, I am looking at primarily the income disparity between the parties. All right? And I know that Ms. Khan has had some money from her family. I don't think that she had intended that that money be used for paying litigation for divorce. It was an emergency at the time and it was there. But I am going to award some attorney fees to Ms. Khan from Mr. Jamal. And I am going to award $10,000 in attorney fees. And again, that is based primarily on the income discrepancies between Mr. Khan (sic) and Ms.—Mr. Jamal. I believe that this is reasonable in light of the circumstances and everything that has been presented to me.
>
> I certainly do understand, sir, the student loan issue. I understand that very well. Fortunately, that can—it's not an amount that is due and owing today.  I do believe that with your income you are going to be able to recover from the expenses of this divorce. And I'm sure that you will continue to be as successful as you are currently in your position.
>
> But I do believe that Ms. Khan, based on her financial circumstances, –is—that 10,000 in attorney fees is reasonable and I am so ordering that.

The trial court's findings and conclusions on the marriage also addressed the fee issue, stating that Kahn "incurred fees and costs, and needs help to pay those fees and costs. [Jamal] has the ability to help pay fees and costs and should be ordered to pay the amount as listed in the final order. The court finds that the amount ordered is reasonable."

There are two errors in this fee award.  First, the trial court recognized that Khan had the resources to pay her own legal fees.  Second, the evidentiary record

does not support the trial court's finding that Jamal has the ability to pay Khan $10,000.

First, Khan represented that she had incurred $25,000 in attorney fees, which she paid using funds she had received as a gift from her family. The record indicates that she received approximately $80,000 from her family in 2015 and at least $30,000 remained in the account at the time of trial. The trial court recognized that Khan had sufficient funds to pay her own attorney fees but ordered Jamal to reimburse her $10,000 "based primarily on the income discrepancies" between Khan and Jamal. But an income gap alone does not establish Khan's financial need. To the contrary, the record establishes that Khan had sufficient funds with which to pay her attorney fees.

Second, the record does not support the trial court's finding that Jamal has the ability to pay Khan this sum of money. Unlike Khan, who had funds available to cover the costs of litigation, Jamal paid his $28,000 in attorney fees with credit cards, a debt he still owes. Jamal claimed only $2,200 in available assets during trial and, despite a significantly higher income than Khan, his monthly net income will be depleted by household expenses, child support, and spousal maintenance. And while he had a small balance available on a line of credit, it was insufficient to cover an award of attorney fees. The trial court made no findings as to how Jamal was to pay this fee award. We therefore conclude that the trial court abused its discretion in awarding Khan attorney fees.

Both parties request an award of attorney fees on appeal. Both seek fees under RCW 26.09.140, while Khan also requests fees under RAP 18.9(a), arguing that Jamal filed a frivolous appeal. We decline to award fees to either party.

We affirm the trial court's decision not to grant Jamal a deviation from the standard child support calculation, as that decision is supported by the record, as well as its award of spousal maintenance for two years post-dissolution. However, we reverse the attorney fee award to Khan because the evidence fails to demonstrate that Khan has the need for such an award or that Jamal has the ability to pay it.

Andrus, C.J.

WE CONCUR:

Birk, J.

Mann, J.