122 P.3d 929 (2005)
In re the Marriage of Scott GOODELL, Appellant,
v.
Cathleen M. GOODELL, Respondent.
No. 32469-5-II.
Court of Appeals of Washington, Division 2.
November 15, 2005.
*931 Christopher Martin Constantine, of Counsel Inc. PS, Tacoma, WA, for Appellant.
Barbara Jo Reisinger Sylvester, McGavick Graves PS, Tacoma, WA, for Respondent.
VAN DEREN, A.C.J.
¶ 1 Scott Goodell appeals the trial court's order revising a court commissioner's child support order. He asserts that the trial court erred by (1) not imputing income to his former wife, Cathie Goodell; (2) determining Scott's income based on pay stubs that were not before the court commissioner; (3) refusing a deviation for Scott's new child; (4) incorrectly computing health care expenses; and (5) awarding attorney fees of $1,000 to Cathie. We hold that the trial court erred in failing to impute income to Cathie and in considering income and expense information that was not before the court commissioner, but we affirm the remainder of the trial court's decision. We reverse and remand for recalculation of the proper child support amount.

I. FACTS

A. Dissolution Agreement
¶ 2 Scott and Cathie Goodell dissolved their marriage in 2002. The parties agreed to an order of child support for their one child who was born in 1998. The order required Scott to pay $739[1] per month based on his monthly net income of $5,347.[2] At that time, Cathie had no earnings. The child support order recited that "[m]other is currently unemployed by agreement of the parties."[3] Clerk's Papers (CP) at 35. The order required Scott to pay 100 percent of the child's private preschool tuition through May 2003, and reserved any further issues regarding private school costs. Scott agreed to maintain health insurance for the child and to cover 100 percent of the extraordinary health care expenses.
¶ 3 Scott and Cathie also entered into a property settlement agreement. As part of that agreement, Cathie received, subject to any encumbrances, all bank accounts in her name; the couple's home in Gig Harbor; an Individual Retirement Account (IRA) account in her name worth $10,444; an IRA account in Scott's name worth $14,099; six acres of undeveloped land in Gig Harbor; her car; all her personal effects and jewelry; and 50 percent of any proceeds from the Milgard Windows project.[4] Scott agreed to pay the mortgage on the Gig Harbor home for April 2002. He also agreed to pay maintenance of $2,090 a month for May and June 2002, and $1,540 a month maintenance for six months, beginning in July 2002. Scott received an IRA account in his name worth $94,171, all bank accounts in his name, 50 percent of the proceeds from the Milgard *932 Windows project, and various furniture items in the Gig Harbor home.
¶ 4 In 2003, Cathie obtained a job at Patient Accounting Services in Kent, Washington. She left that job in June 2003, because the commute from Gig Harbor adversely affected her ability to secure daycare. Cathie asserted that she continued to seek employment but that she did not receive any employment offers.
¶ 5 In 2004, Scott filed a motion and declaration for adjustment of child support because (1) more than two years had passed since the first order of child support; (2) Cathie continued to be unemployed; (3) Scott's income had changed; and (4) Scott had a child in 2003 from a subsequent marriage. In response, Cathie requested that Scott be required to (1) continue to pay private school costs; (2) pay her attorney fees; and (3) supply proof of his 2004 income.[5] Cathie further requested that the court not impute income to her based on the parties' 2002 agreement.[6] She asked that if the court did impute income, that it order Scott to pay a pro-rata share of daycare expenses incurred both while she sought employment and after she obtained employment.

B. Procedural Facts
¶ 6 A court commissioner first heard the matter. The commissioner's decision was based on the parties' affidavits and financial information, and oral argument, without live testimony. Scott argued that the court should average his 2002 and 2003 W-2 income because his compensation was based on commissions rather than salary. Cathie presented evidence of Scott's January to April 2004 income to the commissioner. She asked the court to total his 2004 income and divide it by four to determine Scott's income for purposes of the child support calculation.
¶ 7 The court commissioner determined that Scott's monthly net income, for purposes of the child support calculation, was $6,367.75, based solely on his 2003 W-2. The commissioner rejected Cathie's argument that the 2002 agreement permanently relieved her of her support obligation, and imputed $1,957 a month income to Cathie due to her continuing unemployment, according to RCW 26.19 071 and Ch. 26.19 RCWA app.[7] The commissioner ordered Scott to pay Cathie $487.48 per month, and allocated extraordinary health care expenses proportionately between them. The commissioner also allowed a downward support deviation for Scott's new child, and calculated Scott's monthly health insurance premium at $262. Finally, the commissioner denied Cathie's request for attorney fees.
¶ 8 Cathie moved for revision. She argued that the child support should have been based on Scott's 2004 income.[8] She also argued that the court erred when it (1) imputed income to her; (2) allowed a deviation for Scott's new child; (3) calculated the health insurance expenses; (4) denied her request for attorney fees; and (5) required mediation regarding private schooling.[9]
¶ 9 The superior court revised the commissioner's ruling. It refused to impute income to Cathie, stating, "I don't think the case law takes precedence over the agreement; otherwise, that would be an impairment of the contract, and we have these constitutional things about impairing a contract. So she shouldn't have had any calculation to impute income on her side." Report of Proceedings at 14. Thus, the court also required Scott to *933 continue to pay 100 percent of any extraordinary health care expenses.
¶ 10 The court based its child support calculations on Scott's income from January through September 2004, even though the May through September income information had not been provided to the commissioner. It denied Scott's request for a deviation for his second child, stating that it lacked the required information about the new family, and calculated monthly health care costs for the child at $93 rather than $262. Scott's resulting monthly child support obligation was $936.70. Finally, the court ordered Scott to pay $1,000 of Cathie's attorney fees.
¶ 11 The court denied Scott's motion for reconsideration. He timely appeals.

II. ANALYSIS

A. Standard of Review
¶ 12 The trial court has broad jurisdiction to modify child support provisions. In re Marriage of Dodd, 120 Wash.App. 638, 644, 86 P.3d 801 (2004) (citations omitted). We apply an abuse of discretion standard and "cannot substitute [our] judgment for that of the trial court unless the trial court's decision rests on unreasonable or untenable grounds." Dodd, 120 Wash.App. at 644, 86 P.3d 801.

B. Consideration of New Evidence on Revision
¶ 13 The superior court has the authority to review the records of the case and a commissioner's findings of fact and conclusions of law. WASH. CONST., art. IV, § 23; RCW 2.24.050; Dodd, 120 Wash.App. at 643, 86 P.3d 801. The superior court's review is not limited to whether substantial evidence supports the commissioner's finding, but it is "authorized to determine its own facts based on the record before the commissioner." Dodd, 120 Wash.App. at 644, 86 P.3d 801[10] (emphasis added).
¶ 14 In 1999, our Supreme Court held:
In an appropriate case, the superior court judge may determine that remand to the commissioner for further proceedings is necessary. Generally, a superior court judge's review of a court commissioner's ruling, pursuant to a motion for revision, is limited to the evidence and issues presented to the commissioner. In cases such as this one, where the evidence before the commissioner did not include live testimony, then the superior court judge's review of the record is de novo.
In re Marriage of Moody, 137 Wash.2d 979, 992-93, 976 P.2d 1240 (1999) (emphasis added). The court held that the superior court acted properly when it refused to consider new issues raised and new evidence provided by the former husband in the motion for revision. Moody, 137 Wash.2d at 993, 976 P.2d 1240.
¶ 15 In 2000, Division Three of this court held that the superior court is limited to the evidence and issues presented to the commissioner. In re Marriage of Balcom, 101 Wash.App. 56, 59, 1 P.3d 1174 (2000). It is error for the superior court to consider additional evidence on revision. Balcom, 101 Wash.App. at 59-60, 1 P.3d 1174. Rather, the court may remand the case to the commissioner to consider the additional information. Balcom, 101 Wash.App. at 59, 1 P.3d 1174.
¶ 16 Here, the superior court erroneously considered additional evidence of Scott's income in May, June, July, August, and September 2004.[11] Thus, even though *934 the court relied on the most current information about Scott's income, it did so improperly.

C. Voluntary Unemployment and Imputed Income
¶ 17 A parent may not avoid his or her child support obligation by remaining voluntarily unemployed or underemployed. RCW 26.19.071(6) governs the standards for calculating and imputing income when determining child support. It provides in pertinent part:
The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors.... Income shall not be imputed for an unemployable parent.... In the absence of information to the contrary, a parent's imputed income shall be based on the median income of year-round full-time workers as derived from the United States bureau of census, current populations reports, or such replacement report as published by the bureau of census.
RCW 26.19.071(6).
¶ 18 Cathie demonstrated her employability when she held a job at Patient Accounting Services in 2003. The mere fact that she chose to quit her job does not render her employment status involuntary. If Scott chose to quit his job, it is likely that the court would impute income to him in order to impose a child support obligation. See e.g., In re Marriage of Pollard, 99 Wash.App. 48, 54, 991 P.2d 1201 (2000) ("If the shoe were on the other foot, and a noncustodial father sought to reduce his child support obligation because he chose to stay home with his children from a new marriage, most courts would impute income to such a voluntarily unemployed or underemployed parent."). While Cathie presents evidence of attempts to obtain employment, she does not provide any reasonable explanation about why she failed to hold a job from June 2003 through October 2004.
¶ 19 Thus, the court abused its discretion when it failed to find Cathie voluntarily unemployed and failed to impute her income according to Ch. 26.19 RCWA app.

D. Agreement to Not Pay Child Support
¶ 20 The trial court also refused to impute income to Cathie based on the statement in the 2002 child support order that she was unemployed by agreement of the parties at the time of the divorce decree. The trial court treated that language as an enforceable contract between Scott and Cathie. But contracts that purport to terminate future child support are invalid because they contravene public policy. In re Marriage of Pippins, 46 Wash.App. 805, 808, 732 P.2d 1005 (1987). Parents cannot agree to prospectively terminate either parent's obligation to support their children. Pippins, 46 Wash.App. at 808, 732 P.2d 1005.
¶ 21 Here, Cathie apparently seeks to permanently avoid her duty of support. Since it is well settled that parents cannot avoid their child support obligations by mere agreement, even if we were to agree with the trial court that the recitation was a contract, the agreement is void as against the strong public policy articulated by the legislature that all parents have a duty to support their children. See RCW 26.19.001, .011, .020. Pollard, 99 Wash.App. at 48, 991 P.2d 1201. Thus, the trial court erred in relieving Cathie of her support obligation based on the 2002 recitation in the child support order.

E. Deviation for New Child
¶ 22 The court may deviate from the standard child support calculation when either parent has children from other relationships to whom he or she owes a duty of support. RCW 26.19.075(1)(e). RCW 26.19.075(2) requires the parties and their spouses to disclose all income and resources. A deviation from the standard support amount is an exception and should only be used where it would be inequitable not to do so. In re Marriage of Burch, 81 Wash.App. 756, 760, 916 P.2d 443 (1996).
¶ 23 Here, the court did not grant Scott a downward deviation of his child support to *935 Cathie because it stated that it lacked sufficient information about Scott's new family and its economic circumstances. Scott argues that he disclosed his 2002 and 2003 W-2s, his 2004 pay stubs, and his 2002 and 2003 joint tax returns with his new wife. The tax returns list Scott and his wife's income, his dependents, his occupation, and his wife's occupation. But Scott did not provide a summary of his household's monthly expenses, nor did he reveal whether his new wife received child support for her other child.[12]
¶ 24 It is within the trial court's discretion to grant or deny a deviation and, generally, trial courts are not reversed on such decisions. In re Marriage of Griffin, 114 Wash.2d 772, 776, 791 P.2d 519 (1990). Here, the trial court did not abuse its discretion in denying a deviation for Scott's new child based on its lack of pertinent asset and expense information.

F. Health Care Expenses
¶ 25 A child's ordinary health care expenses are included in the child support schedule. RCW 26.19.080(2).[13] But the court must identify any insurance premium and any extraordinary health care expenses on the child support worksheet. The parent who pays an insurance premium is entitled to a credit against their child support obligation for the monthly premium. Marriage of Scanlon, 109 Wash.App. 167, 175, 34 P.3d 877 (2001). Scott argues that the court improperly calculated his monthly premium for the child's health insurance.
¶ 26 Scott's employer offered health insurance for Scott for $20 per month. For Scott and his children, the company charged $282 per month. To insure the entire family, the cost was $597. It appears that the commissioner only subtracted the $20 premium for Scott from the $282 and used the remaining $262 as credit against Scott's child support obligation for health insurance for his and Cathie's child, without regard to the other two children who were also covered by the remaining $262 premium.[14]Scanlon, 109 Wash.App. at 175, 34 P.3d 877 ("[A] credit may not include ... any portion of premium not covering the child at issue.").
¶ 27 The monthly insurance cost increased before the revision hearing.[15] At that time, Scott's personal insurance cost $25 and the company charged $304 for Scott and his children. The court subtracted $25 for Scott's insurance premium, leaving $279 as the premium for the three children. The court then divided $279 by three, which resulted in the $93 credit Scott received against his support obligation on revision. Although the child support guidelines caution about including insurance premiums for other family members, it appears that Scott's employer did not charge him a premium per child, but rather, for all children at a flat rate. Thus, the trial court's methodology used to determine a fair allocation of the $304 premium among Scott and three children is not unreasonable. But the court is limited to evidence on the record before the commissioner. Dodd, 120 Wash.App. at 644, 86 P.3d 801. Since it used different figures than the commissioner in determining the monthly healthcare premium, it appears that the court reviewed different or additional evidence to make its finding. Thus, even though the court used the most recent information to make its calculation, it did so improperly.
¶ 28 Extraordinary health care costs are costs that exceed five percent of the basic *936 support obligation. RCW 26.19.080(2). They are allocated to each parent in the same proportion as their basic support obligations. RCW 26.19.080(1). When the court refused to impute any income to Cathie, it also extinguished Cathie's obligation to share in payment of extraordinary health care costs. Since the court erred in not imputing income to Cathie, it necessarily erred by requiring Scott to pay 100 percent of the extraordinary health care costs.

G. Attorney Fees
¶ 29 The court has discretion to award attorney fees based on a balancing of the needs of the spouse seeking fees against the ability of the other spouse to pay. RCW 26.09.140[16]; Moody, 137 Wash.2d at 994, 976 P.2d 1240. We review the trial court's decision on attorney fees for an abuse of discretion. In re Marriage of Nelson, 62 Wash.App. 515, 521, 814 P.2d 1208 (1991).
¶ 30 The court awarded Cathie $1,000 in attorney fees based on her argument that she had no current income. The court had Cathie's financial information form in the record, as well as both parties' income tax returns and W-2s for two years. These showed that Scott earned over $7,000 per month, while Cathie had little or no income. On the other hand, Cathie had fairly sizable assets, including cash,[17] consistent with the property division in 2002. Scott did not file a financial declaration showing his household expenses. There was no information about his accumulated savings, if any, child support received by his new wife, or his household expenses compared to his net income. It was not error for the court to consider Scott's ability to pay Cathie $1,000 toward her fees given his income and her likely need to use her savings for household expenses during her period of unemployment. Thus, although unusual in light of the amount of cash Cathie had in the bank, the court did not abuse its discretion.
¶ 31 Citing RAP 14.2, 14.3, 18.1, and RCW 26.09.140, Cathie requests attorney fees and costs on appeal. Under RAP 14.2, we may award costs to the prevailing party. Since both parties partially prevail, but neither is the substantially prevailing party in this appeal, Cathie is not entitled to costs under RAP 14.2 and 14.3.
¶ 32 RAP 18.1 allows this court to award fees and costs where it is statutorily allowed. Under RCW 26.09.140 the court may award fees based on the financial need of the requesting party and the other party's ability to pay. Here, Cathie still has approximately $44,000 in cash or stocks and bonds. Her financial declaration also indicates that she began employment at Labor Ready, Inc. on May 4, 2005. The stability of her financial assets and her employment do not indicate financial need warranting an award of attorney fees under RCW 26.09.140. Thus, we deny her fees and costs on appeal.
¶ 33 We reverse the superior court's child support order and remand for a new calculation of child support, with a proportionate allocation of health care expenses, using imputed or actual earned income for Cathie since the date Scott filed his petition to modify or adjust child support, and monthly healthcare premium figures submitted to the commissioner.
We concur: HOUGHTON and ARMSTRONG, JJ.
NOTES
[1] The $739 monthly child support payment fell within the standard calculation set forth in the support schedule.
[2] The support order based Scott's income on his last known earnings of $7,000 per month less taxes.
[3] Although the parties recite that the child support order accords with the Washington State Child Support Schedule, the schedule does not contemplate waiver of either parents' child support obligation.
[4] The parties do not explain the Milgard Windows project, nor do they raise it as an issue.
[5] Scott responded that he did not provide his 2004 income because the child support order required the parties to exchange W-2s and he did not know that he was required to provide anything more.
[6] In his reply declaration, Scott argued that he did not intend to agree to Cathie remaining unemployed but signed the agreement in order to "get the case over and done with." CP at 113.
[7] The ruling stated: "The income of the obligee is imputed at $1,957 because the obligee is voluntarily unemployed." CP at 147. The commissioner then crossed out the word voluntarily.
[8] Cathie contends that Scott received a promotion. Scott counters that he did not, but rather obtained a new position and any increase in pay was accurately reflected in his 2003 W-2s.
[9] The issue relating to mediation over private school issues is not raised here and we do not address it.
[10] Division Three of this court held that the superior court is in the same position as the appellate court and reviews the findings of fact for substantial evidence. In re Marriage of Dodd, 120 Wash.App. 638, 643, 86 P.3d 801 (2004). But, in fact, a review for substantial evidence occurs only if the commissioner heard live testimony. When live testimony does not form a basis or partial basis for the commissioner's decision, the trial court reviews the record de novo. Dodd, 120 Wash.App. at 644, 86 P.3d 801; In re Marriage of Moody, 137 Wash.2d 979, 992-93, 976 P.2d 1240 (1999).
[11] We are aware of our 1997 decision in In re Marriage of Gainey that "[a] superior court judge is permitted to take new evidence when considering a motion to revise the ruling of a court commissioner, but he or she is not required to do so." 89 Wash.App. 269, 273-74, 948 P.2d 865 (1997). In light of the Supreme Court decision in Moody, this is no longer good law. 137 Wash.2d at 993, 976 P.2d 1240.
[12] In addition to Cathie and Scott's child and Scott's new child, Scott also cares for and insures a step-child.
[13] RCW 26.19.080(2) states:

Ordinary health care expenses are included in the economic table. Monthly health care expenses that exceed five percent of the basic support obligation shall be considered extraordinary health care expenses. Extraordinary health care expenses shall be shared by the parents in the same proportion as the basic child support obligation. See also, Ch. 26.19 RCWA app. (Thomson/West 2005) (Allocation Standard 2) at 260.
[14] Scott also insures his step-child.
[15] The respondent's brief states the new premium amount, but cites to a sealed record that we do not have. The trial court appears to use the increased numbers in its calculation, but the only information in the record on appeal is the lower premiums.
[16] RCW 26.09.140 reads in part: "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees ..."
[17] The record indicates that Cathie had $48,000 in the bank and $24,000 in stocks and bonds.