

COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 NOV 17 AM 9: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of<br><br>MELISSA MONTGOMERY, formerly known as MELISSA NADIR,<br><br>             Respondent,<br><br>and<br><br>WANIS NADIR,<br><br>             Appellant. | No. 70804-0-I<br><br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: November 17, 2014 |

VERELLEN, A.C.J. — Wanis Nadir appeals the modification of orders providing for the care and support of his child with Melissa Montgomery. He also challenges the trial court's award of attorney fees to Montgomery. Although the incomplete record and poor briefing present significant obstacles to our review, we affirm because Nadir fails to demonstrate that the trial court abused its discretion in the particular circumstances of this case.

## FACTS

Nadir and Montgomery married in May 2002 and their son, N.N., was born on September 16, 2003. Montgomery filed a petition for dissolution in April 2007. In August 2008, the trial court entered orders dissolving the marriage and providing for N.N.'s care and support. In June 2012, Montgomery petitioned for modification of the parenting plan.

At the modification trial in July 2013, Montgomery testified that her relationship with Nadir involved domestic abuse and described two incidents of physical assault. She acknowledged that the 2008 parenting plan stated that domestic violence and abuse were never an issue in the relationship, but testified that Nadir coerced her into accepting that language as a condition of any agreement. Montgomery also testified that Nadir was very controlling and often told her that he "would abandon" N.N. if she accused him of domestic violence and that Nadir "had shown [her] what that would look like . . . by not seeing [N.N.] for over three months."[1] Montgomery testified that she obtained a protection order against Nadir in 2009.

Montgomery also presented the testimony of Jennifer Bercot, a Family Court Services social worker who completed a court-ordered domestic violence assessment for the protection order proceedings in January 2012. In her report, Bercot opined that Nadir had "demonstrated behaviors of domestic violence."[2] In addition to considering incidents of physical force in 2007 and a later "pattern of harassment" including "excessive text messages," Bercot also noted, "It appears that the father has used more subtle means to manipulate and harass the mother through the court system and also through the parenting plan."[3] Bercot recommended a full protection order for Montgomery and N.N., domestic violence treatment for Nadir, professionally supervised visitation for Nadir until he completed nine months of domestic violence treatment and group therapy, and a parenting plan designating Montgomery as the sole decision-maker.

---

[1] Report of Proceedings (RP) (July 2, 2013) at 27.

[2] Exhibit 28 at 11.

[3] Id.

2

Nadir testified that during their relationship, Montgomery threatened to call the police with a false report of domestic violence. He also testified that she physically attacked him by lunging at him in the car and injured herself when she fell on the pavement as he backed away. Although he admitted to once threatening not to see N.N. because of the conflicts with Montgomery, Nadir did not recall how long he had gone without seeing N.N. or how he had responded to several of Montgomery's e-mails requesting his participation and support for N.N.'s extracurricular activities. Throughout his testimony, Nadir characterized Montgomery as aggressive and unreasonable and claimed that Montgomery caused the conflict in the relationship and initiated the vast majority of the contentious litigation between the parties. He presented several witnesses, including the owner of a supervised visitation agency, a professional visitation supervisor, his former co-workers, his brother, his fiancée, the court-appointed guardian ad litem (GAL), Montgomery's former co-worker, and his domestic violence treatment provider.

In closing, Montgomery requested a standard calculation of child support, a continuation of the existing residential schedule, a restriction on Nadir's decision-making authority based on a finding of domestic violence, and an award of attorney fees and costs based on Nadir's intransigence as well as Montgomery's need and Nadir's ability to pay.

Nadir requested joint decision-making with the assistance of an intermediary as recommended by the GAL, vacation of the protection order based on a finding that Montgomery's allegations of domestic violence were false, reallocation of the GAL fees, a finding that Nadir had satisfied previously ordered domestic violence

3

treatment and therapy, a child support order with a deviation from the standard calculation for his son from a previous relationship, and a parenting plan including restrictions on Montgomery's parenting based on abusive use of conflict.

On July 23, 2013, the trial court entered an order on modification, a child support order, and a parenting plan largely consistent with Montgomery's requests. The court entered a judgment against Nadir for attorney fees and costs on August 9, 2013. Nadir appeals.

## STANDARD OF REVIEW

"This court reviews trial court decisions dealing with the welfare of children for abuse of discretion."[4] A trial court abuses its discretion when its decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'"[5]

We will reverse a trial court's factual findings only if they are unsupported by substantial evidence in the record.[6] We review de novo whether the trial court's conclusions of law flow from its findings.[7] Unchallenged findings are verities on appeal.[8]

---

[4] In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004).

[5] Id. (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[6] In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. Share, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

[7] Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006).

[8] Cowiche Canyon Conservatory v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

## ANALYSIS

As a preliminary matter, we note that Nadir bears the burden of complying with the Rules of Appellate Procedure (RAP) and perfecting the record on appeal so that this court has before it all the evidence relevant to deciding the issues presented.[9] Failure to provide an adequate record precludes appellate review.[10]

RAP 9 describes the proper procedure for perfecting the record, including both the designation and filing of clerk's papers.[11] Here, Nadir designated only exhibits.[12] Although RAP 9 specifically allows any party to supplement the designation of clerk's papers, Montgomery chose not to do so.[13] Instead, both parties attached certain documents as appendices to their briefs.[14] The inadequacy of the record before us could justify dismissal.[15]

---

[9] RAP 9.6(a); In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990).

[10] See Olmsted v. Mulder, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993) (court refused to reach the merits of appellant's arguments because he failed to provide a sufficient trial record).

[11] RAP 9.1(a), (c), 9.6, 9.7(a).

[12] Nadir has provided a verbatim report of the proceedings that appears to be a complete transcript of the trial proceedings on July 2-3, 9-10, and 15. However, without the superior court clerk's minutes or any minute entry, we cannot discern whether the transcript is actually complete. Similarly, Nadir has designated and filed many exhibits comprising hundreds of pages, the majority of which appear to have been marked for identification only. Because the exhibit list filed by the superior court clerk has not been provided, we cannot consult the official record to verify the date each exhibit was offered and admitted or refused, except by examining the trial transcript.

[13] RAP 9.6(a).

[14] Neither party filed a motion to strike any appendix.

[15] See City of Seattle v. Torkar, 25 Wn. App. 476, 478, 610 P.2d 379 (1980) (dismissal of pro se appellant's appeal for failure to file clerk's papers and report of proceedings).

Also, despite his multiple claims based on an asserted lack of written findings, Nadir fails to assign error to any of the written findings the trial actually entered.[16] And Nadir fails to support the majority of his claims with relevant authority, citations to the record, and cogent argument.[17] However, to the extent possible, we have considered the merits of Nadir's claims.[18]

## Trial Witnesses

Nadir first claims that the trial court abused its discretion by excluding the testimony of Dr. Jody McVittie and by denying his request to call Montgomery as a witness. "The admission or refusal of evidence lies largely within the sound discretion of the trial court and will only be reversed upon a showing of abuse of that discretion.[19]

Nadir called Dr. McVittie, who identified herself as a licensed family physician and a parenting coach and testified that Nadir contacted her "to talk about improving his parenting skills in December of 2011."[20] After Dr. McVittie admitted that she had never testified in court as a parenting expert and had no license or certification as a parenting evaluator or counselor, the court asked Nadir to make an offer of proof as

---

[16] Under RAP 10.3(g), "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number."

[17] See RAP 10.3(a)(6); Cowiche Canyon, 118 Wn.2d at 809 (declining to consider arguments unsupported by reference to the record or citation to authority).

[18] Rhinevault v. Rhinevault, 91 Wn. App. 688, 693, 959 P.2d 687 (1998) ("[A]lthough the designated record and briefing in this case teeter on a tightrope of inadequacy, with some difficulty we have gleaned an outline of the facts sufficient to resolve the issues before us.").

[19] Hume v. American Disposal Co., 124 Wn.2d 656, 666, 880 P.2d 988 (1994).

[20] RP (July 3, 2013) at 244.

to the relevance of her expected testimony. Nadir claimed Dr. McVittie would testify that she coached Nadir and his fiancée over the course of a series of telephone conversations about parenting and co-parenting. According to Nadir, her testimony would demonstrate his "willingness to engage in whatever he needed to . . . co-parent" and "figur[e] out how to deal better with Ms. Montgomery."[21] The trial court excluded Dr. McVittie's testimony as irrelevant and/or hearsay, stating that Nadir was "the best person to testify to those points."[22]

Here, without citation to relevant authority, Nadir claims the trial court failed to consider N.N.'s best interests and "unfairly and on no rational legal grounds" excluded Dr. McVittie's testimony relevant to his parenting skills and his willingness to learn to cooperate with Montgomery.[23] We disagree. Any statements made during the telephone conversations between Dr. McVittie and Nadir would be properly excluded as hearsay.[24] And Dr. McVittie specifically stated that she was not providing medical treatment to Nadir.[25] She was not qualified or asked to provide an expert evaluation or opinion of Nadir's parenting and had no basis to judge Nadir's actions with regard to his parenting or his cooperation with Montgomery beyond what he told her over the phone. A general description of the topics discussed or Nadir's

---

[21] RP (July 9, 2013) at 418.

[22] Id. at 419.

[23] Appellant's Br. at 6.

[24] Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible unless allowed by court rule or statute. ER 802.

[25] See ER 803(4) (providing that certain statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule).

7

enthusiasm to participate in the conversations seems at best marginally relevant. Nadir fails to show any abuse of discretion in the court's ruling with regard to Dr. McVittie's proposed testimony.

Nadir next challenges the trial court's denial of his request to call Montgomery in his case-in-chief. When asked at trial to make an offer of proof, Nadir indicated he wanted to question Montgomery about (1) the contents of her petition for dissolution; (2) her "upbringing"; (3) N.N.'s surgeries; (4) the contents of her trial brief; and (5) incidents that occurred during mediation. Observing that such issues could have been raised during his extensive cross-examination of Montgomery or that had been previously excluded, the trial court denied Nadir's request to call Montgomery.

Nadir fails to provide relevant authority or cogent argument to demonstrate any abuse of discretion in this ruling. The trial court carefully and repeatedly explained to Nadir's counsel at trial that any reference to the mediation was inadmissible under ER 408 and had previously been stricken from the trial briefs and excluded from evidence. On appeal, Nadir fails to acknowledge or properly assign error to that ruling. And the trial court did not limit Nadir's cross-examination.[26] As below, Nadir fails to articulate any relevant evidence he could not have introduced in cross-examination and would have introduced in a direct examination of Montgomery, but for the trial court's ruling. Nadir identifies only impeachment issues, such as her "changing stories about the alleged domestic violence," that were proper cross-

---

[26] In fact, when call for recess on the first day of trial after the "redirect examination" of Montgomery, the trial court specifically told Nadir's attorney, "If you have recross, you may start tomorrow with it." RP (July 2, 2013) at 170.

examination topics.[27] Contrary to Nadir's apparent belief, his attorney's repeated statements on the record that she intended to call Montgomery as a witness in Nadir's case to testify to undefined topics did not bind the trial court to allow such an examination. The trial court did not abuse its discretion.

*Travel Restrictions*

Relying on Katare v. Katare,[28] Nadir claims the trial court abused its discretion by imposing travel restrictions without any findings of fact or supporting evidence. In particular, the parenting plan states, "The father is not allowed to take the child out of the [s]tate of Washington without the mother's written consent."[29]

"RCW 26.09.191(1) and (2) are mandatory provisions that require the trial court to restrict a parent's conduct or involvement with the child, while RCW 26.09.191(3) is a discretionary provision that permits a trial court to restrict a parent's actions."[30] Unlike the other provisions under RCW 26.09.191(3), "RCW 26.09.191(3)(g) is a catchall provision."[31] In Katare, the trial court entered findings explicitly stating that RCW 26.09.191(1), (2), and (3) did not apply, but then imposed travel restrictions on the father based on findings under RCW 26.09.191(3)(g).[32] This court remanded for the trial court to address the ambiguity by clarifying the legal basis for imposing the restriction and making necessary findings

---

[27] Appellant's Br. at 9.

[28] 125 Wn. App. 813, 816, 105 P.3d 44 (2004).

[29] Parenting Plan at ¶ 3.10.

[30] Katare, 125 Wn. App. at 825.

[31] In re Marriage of Chandola, 180 Wn.2d 632, 640, 327 P.3d 644 (2014).

[32] See Katare, 125 Wn. App. at 829-31.

as appropriate.[33] In later proceedings in Katare, our Supreme Court held that imposition of restrictions under RCW 29.09.191(3)(g) requires findings of "more than the normal . . . hardships which predictably result from a dissolution of marriage."[34]

Here, the trial court marked the box on the parenting plan for a finding of "[a] history of acts of domestic violence as defined in RCW 26.50.010(1) or sexual assault which causes grievous bodily harm or the fear of such harm."[35] This finding requires the imposition of restrictions under RCW 26.09.191(1)(c) and (2)(a)(iii). The court also marked the box stating, "The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development."[36] This finding authorizes restrictions under RCW 26.09.191(3)(e). Nadir did not acknowledge or assign error to these findings in his opening brief, arguing instead that there was no evidence produced at trial regarding his travel with N.N.[37] Nadir fails to identify any authority holding that the finding of abusive use of conflict is insufficient to support imposition, under RCW 26.09.191(3)(e), of the particular restriction at issue in the circumstances of this case.

---

[33] Id. at 831.

[34] Katare v. Katare, 175 Wn.2d 23, 36, 283 P.3d 546 (2012).

[35] Parenting Plan ¶ 2.1.

[36] Parenting Plan ¶ 2.2. Although the mark is very faint on the copy of the parenting plan attached to Nadir's opening brief, it appears to be an "X" and is consistent with the spacing of the check boxes throughout the document and with the trial court's finding in the modification order providing that "Respondent's abusive use of conflict interfering with decisions in the child's best interests." Order Re Modification at ¶ 2.3.

[37] In his reply brief, Nadir argues that the general finding of domestic violence does not justify travel restrictions.

And our review of the record reveals ample evidence to support the trial court's finding that Nadir's abusive use of conflict had an adverse effect on N.N.'s best interests. Montgomery and her husband, who also testified at trial, described incidents where Nadir yelled at and argued with her in front of N.N., upsetting N.N. to the point of tears. Montgomery described Nadir's threat, which he admitted at trial, to abandon N.N., as well as his threatening and harassing e-mails and text messages. Montgomery also described Nadir's repeated resistance to cooperate with her to address N.N.'s dental and medical issues and his participation in sports and recreational activities. As to travel, Nadir admitted that he had refused to allow N.N. to attend Montgomery's wedding and instead took N.N. on a Father's Day weekend vacation trip. Nadir's fiancée testified that she would not reveal the details of her upcoming wedding with Nadir, claiming that she feared Montgomery would prevent N.N. from attending out of spite.

Nadir refers only to evidence in the record consistent with his view of the facts. But the trial court's orders are consistent with Montgomery's testimony and evidence and inconsistent with Nadir's testimony and evidence. We defer to the trial court with regard to weight of the evidence or credibility of witnesses.[38] Under circumstances here, Nadir fails to demonstrate abuse of discretion in the trial court's imposition of the restriction requiring Montgomery's written consent for any travel outside the state.

*Attorney Fee Bond*

Nadir next challenges the trial court's order requiring him to post a bond before initiating court action to resolve future disputes with Montgomery. In the parenting

---

[38] In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

plan, the trial court identified court action as the only method of dispute resolution and ordered:

> Based on a finding that the respondent has engaged in abusive use of litigation, court action initiated by the respondent shall be subject to the following conditions:
>
> 1. Respondent shall provide a copy of this parenting plan to the court with any new filing to apprise the reviewing court of this finding; and
>
> 2. Respondent shall post a bond for payment of petitioner's attorney fees and sanctions, to be paid if the reviewing court finds the action to be without merit.[39]

Nadir does not challenge the trial court's authority to impose the conditions or the purpose or scope of the conditions. Instead, relying on portions of the trial transcript consistent with his view, Nadir claims that the trial court failed to make sufficient findings and had no factual basis to require him to post a bond. We disagree.

We review limitations on a party's access to the court for abuse of discretion.[40]

Montgomery testified at trial that Nadir caused her significant unnecessary attorney fees, stress, and employment difficulties over the course of the dissolution proceedings by (1) filing motions without confirming them; (2) initiating baseless contempt proceedings; (3) contacting her attorney repeatedly after she withdrew; (4) making excessive and unnecessary discovery requests; (5) appearing unannounced at her home late at night to serve papers; and (6) coercing her into

---

[39] Parenting Plan at ¶ V.

[40] In re Marriage of Giordano, 57 Wn. App. 74, 78, 787 P.2d 51 (1990) (no abuse of discretion in imposing moratorium on motions where parties were unduly litigious, as moratorium was not total denial of access, was designed to prevent additional waste judicial resources, delayed hearing for efficient resolution, and provided safety valve for emergencies); see also RCW 2.28.010(3).

agreeing to inaccurate proposed findings and inadequate child support. Montgomery also testified that Nadir failed to pay an attorney fee award of $1,500 as required in the temporary orders entered early in the proceedings. This evidence supports the trial court's finding of Nadir's abusive use of litigation. Because the condition is tailored to prevent Nadir from unnecessarily compounding Montgomery's legal costs with meritless filings as Montgomery described at trial, Nadir fails to demonstrate any abuse of discretion in the trial court's imposition of the condition.

*Child Support*

Nadir challenges the trial court's denial of his request for a deviation from the standard child support calculation based on his child support obligation for his older son from a previous relationship. RCW 26.19.075(1)(e) permits the court to grant a downward deviation from the support schedule "when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support." "A deviation from the standard support amount is an exception and should only be used where it would be inequitable not to do so."[41] "It is within the trial court's discretion to grant or deny a deviation and, generally, trial courts are not reversed on such decisions."[42]

Where a party requests a deviation from the standard child support calculation, the superior court "shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court."[43] RCW 26.19.075(2) requires disclosure of all income and resources of

---

[41] In re Marriage of Goodell, 130 Wn. App. 381, 391, 122 P.3d 929 (2005).

[42] Id.

[43] RCW 26.19.075(3).

13

the parties, their "new spouses or new domestic partners, and other adults in the households." "The function of RCW 26.19.075(2) is to preclude a deviation from being granted unless (1) the parties have fully disclosed their resources and (2) the court enters specific reasons for the deviation."[44]

Here, the trial court found that "[t]he deviation sought by the obligor was denied because: no good reason exists to justify deviation."[45] Nadir contends this finding is insufficient because he presented evidence to support his request. Based on our review of the trial transcript and the limited record before this court on appeal, we disagree.

Nadir admitted during his testimony that, despite his request to have the court consider the financial circumstances of both households, he had not provided any financial information for his fiancée, who was living with him. Although he testified that he regularly paid child support for his older son, Nadir did not present any court order requiring child support. Instead, when asked by the trial court during closing argument which exhibits supported his request for a deviation, Nadir's counsel indicated only that his "bank statements" and his testimony established his payments.[46]

Here, Nadir claims that he "presented his bank statements as evidence at trial."[47] But the record before this court indicates that the bank statements on which

---

[44] In re Marriage of Holmes, 128 Wn. App. 727, 737-38, 117 P.3d 370 (2005).

[45] Order of Child Support at ¶ 3.8.

[46] RP (July 15, 2013) at 761.

[47] Reply Br. at 11.

14

he relies in his briefing were not admitted at trial.[48]

Moreover, nothing in the record before this court identifies the reasons Nadir claimed below to demonstrate that it would be inequitable to apply the standard calculation. And Nadir does not argue or establish that the standard calculation would be inequitable in his briefing before this court. On this record, we see no abuse of discretion in the trial court's denial of his request for a deviation, despite the conclusory finding.

Nadir also assigns error to the trial court's failure to give him a credit against his basic support obligation for his health insurance payment for his coverage of N.N. Nadir claims that his paystubs and bank statements "that were admitted as evidence at trial" demonstrate that he was entitled to a credit.[49] But he admitted on cross-examination that the document provided by his employer showing a "breakdown of medical coverage" for each family member was not in the record before the trial court.[50] And according to Montgomery, because Nadir refused to authorize her to access his policy for N.N.'s benefit while in her care, she had to obtain medical insurance for N.N. from "the State."[51] Moreover, the trial court indicated in written findings in the child support order that the evidence presented at trial was insufficient

---

[48] In his reply brief, Nadir claims that certain entries in his bank records, Exhibit 69, showing only dates, varying amounts, and check numbers demonstrate his child support payments. He fails to identify anything in the record before the trial court to indicate that those particular entries pertain to child support payments. Moreover, Exhibit 69, which was forwarded from the superior court, is marked "For ID Only." Nadir does not indicate in his briefing whether he believes Exhibit 69 was actually offered or admitted into evidence during trial, and if so, when.

[49] Appellant's Br. at 15. Nadir does not identify any admitted trial exhibits by number to support this claim.

[50] RP (July 10, 2013) at 668.

[51] RP (July 2, 2013) at 100.

to determine how health insurance should be provided for N.N.[52] On this record,

Nadir fails to demonstrate that he is entitled to the credit he claims.[53]

*Attorney Fees*

Nadir next challenges the trial court's award of attorney fees to Montgomery.

He claims the award must be reversed because the trial court did not enter findings

as to intransigence or need and ability to pay and failed to consider relevant factors,

indicate how the award was calculated, and allow him to respond to the requested

fee amount.

Trial courts have broad discretion to award attorney fees in a dissolution action

under RCW 26.09.140.[54] The party challenging an award bears the burden of

proving that the trial court exercised this discretion in a way that was clearly

untenable or manifestly unreasonable.[55] Generally, a trial court must consider a

party's ability to pay its own legal costs before awarding it attorney fees, but the

financial resources of the party seeking fees is irrelevant when the award of such

fees is premised upon a need for additional legal services caused by the other party's

---

[52] See Order of Child Support at ¶ 3.18.

[53] In his reply brief, Nadir identifies "conflict" between the child support order and the attached worksheet and "improper calculations" with regard to his gross income and retirement calculations. Reply Br. at 12. To the extent he intended to assert an independent ground for reversal, it comes too late to warrant our consideration. See Cowiche Canyon, 118 Wn.2d at 809.

[54] In re Marriage of Fernau, 39 Wn. App. 695, 708, 694 P.2d 1092 (1984). RCW 26.09.140 provides in pertinent part, "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment."

[55] See Abel v. Abel, 47 Wn.2d 816, 819, 289 P.2d 724 (1955).

intransigence.[56] Normally, the trial court should enter findings of fact and conclusions of law to allow for review of the basis for the award of fees and method of calculating the amount of the award.[57] But an order entered without findings of fact or conclusions of law does not necessarily prevent effective review or constitute reversible error.[58]

Here, the trial court found in the parenting plan that Nadir "has engaged in abusive use of litigation."[59] The court was aware of the parties' differing financial resources after determining child support. Although they are not before this court in the proper form, Montgomery has provided her brief requesting a fee award and a series of e-mail messages between the superior court clerk and both counsel that set a schedule for briefing on attorney fees. In her brief, Montgomery requests $9,558 in attorney fees and $975 in costs, both of which amounts the trial court awarded in the judgment. Nadir does not claim that Montgomery failed to properly document her fee request or that the trial court could not properly consider her brief and adopt its analysis. Under these circumstances, Nadir fails to demonstrate an abuse of discretion in the trial court's award of fees.

Finally, Montgomery requests fees on appeal. Under RAP 18.1, this court may award attorney fees if authorized by applicable law. RCW 26.09.140 provides

---

[56] In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997).

[57] See In re Marriage of Knight, 75 Wn. App. 721, 729-30, 880 P.2d 71 (1994).

[58] In re the Matter of the Parentage of J.M.K., 155 Wn.2d 374, 395-96, 119 P.3d 840 (2005) (affirming award of attorney fees despite lack of findings where "record as a whole" supported trial court's exercise of broad discretion).

[59] Parenting Plan at ¶ V.

for fees on appeal.[60] In exercising our discretion under the statute, we consider the arguable merit of the issues on appeal and the parties' financial resources.[61] Given Nadir's failure to provide a complete record and to present cogent argument based on relevant authority and the record, several issues he raises on appeal have limited arguable merit. And the record demonstrates that Nadir has significant financial resources, while Montgomery is unemployed and has limited means to pay legal fees. Therefore, we award attorney fees and costs to Montgomery, subject to her compliance with RAP 18.1.

Affirmed.

WE CONCUR:

---

[60] "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140.

[61] In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997).