

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39913-3-III |
| SARAH OURADA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SEAN AMESTOY, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Sean Amestoy appeals an order modifying his child support obligation, raising three issues on appeal. First, Amestoy contends the trial court erred when it concluded that full-time employment was defined as a 40-hour work week, and as a result, imputed income to him after finding that his 35-hour average work week was considered part-time work. Second, he argues the trial court erred when it divided his healthcare premium by four (to account for his wife, their child (F.A.), and his wife's two children from a prior relationship) before crediting his child support obligation because the premium was a flat rate and he was required to carry insurance on F.A. Finally, he claims the court erred when it ordered the parents to share equally in extraordinary

expenses related to the child's club gymnastics without finding necessity or evaluating the parents' ability to pay.

We agree with Amestoy and hold that the court abused its discretion in concluding that "full-time" is defined as 40-hours per week and that it must impute income to any parent working less than 40 hours per week. We also agree that the trial court failed to consider and did not make findings that the parents had the ability to pay for extraordinary expenses before ordering Amestoy to pay for the child's gymnastics expense beyond his child support obligation. However, we affirm the trial court's calculation of Amestoy's health insurance credit.

## BACKGROUND

Sean Amestoy and Sarah Ourada have one child together, F.A. An original child support order was entered on October 5, 2015. Several years later, Ourada filed a petition to modify the child support order based on changed incomes. In addition to child support, Ourada requested that Amestoy share in the expenses related to F.A.'s club gymnastics. Ourada explained that F.A. had been involved in gymnastics since she was two years old, was now competing, and had recently been invited to move up to a higher competitive level. She estimated the monthly tuition for this activity to be $277, which did not include expenses for meets, camp, or uniforms.

Amestoy responded and requested a deviation based on either a four-child family or a two-child family. He noted that he supported his wife, F.A., and his wife's two children from a prior relationship.

Amestoy also requested a worksheet deduction for his health insurance premium payment since he covered F.A. on his insurance. In addition to F.A., Amestoy carried his wife, and the two children from his wife's prior relationship on his insurance. He submitted his paystubs and a benefits rate sheet showing that his health care premiums through his employer were based on a flat rate of "Employee + Family" that did not differentiate based on the number of family members covered. His weekly paystubs included a deduction for health insurance premiums.

Finally, he noted that while he had always supported F.A.'s involvement in gymnastics, the additional expense was relatively significant and he could not afford it. He pointed out that F.A.'s grandfather, Ourada's father, had been paying for F.A.'s gymnastics expenses but had recently passed away.

Both parties filed financial declarations showing that they each operated on a monthly deficit. Amestoy submitted paystubs from 2020 to 2023 showing his hourly wage, hours worked, and deductions. He calculated his actual full-time income based on an average work week of 35 hours. Additionally, he noted that he paid $209 per month in health insurance premiums for his family, including his wife and all three children.

3

His financial declaration showed a monthly deficit, which he was making up in the short-term through proceeds from the sale of his house.

At the modification hearing, the court concluded that it was required to impute income to both parties because they were working part-time. The court explained the following:

> So, when we're looking at the income of the parties which is where I need to start the analysis, I start with really what is the most clear information that I have regarding pay. And for both parties, I think there is some availability of overtime. But when I'm looking at your year-to-date paystubs in comparison to your previous years paystubs and the amounts of overtime and whatnot that would have been or had been earned in those capacities, what was most compelling to the court on both of the parties was simply your hourly rate. Your hourly rates of pay, Ms. Ourada at 17 an hour, Mr. Amestoy with the base of 23.10 plus the 1.50 shift differential. So, what I did to start my analysis was really take a peak at what that would be at, annualized at 40 hours a week. *Because the statute is very clear that if a party is not working full-time that the court needs to take any part-time wages and extrapolate them out.* When I talked about overtime previously, you both have had overtime in your paystubs even in this year. And so, what that tells me is that you do and are able to work 40 hours a week at your current rates of pay. So that's what I started your base incomes at was at your current rates of pay, a full 40 hours. *I didn't cut them back to 35 because the statute is pretty clear that I need to pull that out to a full 40.* When I pull that out to a full 40, I think that for me is the cleanest interpretation of both of your incomes.

Rep. of Proc. (RP) at 22-23 (emphasis added).

Using the imputed incomes, the court calculated Ourada's net monthly income to be $2,557 and Amestoy's net monthly income to be $3,470. Combining the parents' net income, the court determined that Amestoy earned 57.6 percent to Ourada's 42.4 percent.

4

The court granted a deviation from Amestoy's calculated share of support based on his support of one other child. While noting that Amestoy did not have a legal obligation to support his wife's children, the court indicated that the size of Amestoy's family did come into play for purposes of insurance.

After discussing income and determining a base support amount, the court then addressed the issue of Amestoy's health insurance premium:

> So, $457.74 is our base support amount. I then looked at the health insurance that Mr. Amestoy pays. I calculated it a little bit different than Ms. Base. But again, I looked at the family rate and subtracted out the employee rate, the family other than Mr. Amestoy, I think there was five, well I divided it by four to divide out the wife's portion and the three children's portion, which . . . 110.32 would be the weekly amount that would make [F.A.'s] amount 27.58 a week. I multiplied that by 52 weeks, divided it by 12 and came up with 119.51. So, when I plug in what Mr. Amestoy's obligation would be which would be 57.6 percent of that that would add $68.81 to his current obligation of 457.74, which would be 526.55 and then subtracted the full amount of what he's paying which is 119.51, which results in a new child support amount of $407.04.

RP at 25-26.

Finally, the court moved on to discuss the gymnastics expenses. The court granted Amestoy a step-in[1] between the new support amount and the old support amount,

---

[1] This allowed Amestoy to ease into his new child support amount. "The step-in is half the difference between the new support amount and the old support amount." Clerk's Papers at 28. The court allowed Amestoy to pay this amount in June through December and thereafter it would become the full amount.

partially because it was ordering that the parties share in the expense of gymnastics. The

court discussed its reasoning behind the shared cost:

> This is a longstanding activity of the child. It is appropriate that a child be able to engage in a sport, some type of extracurricular activity. It's best if both parents are involved and go to the meets and enjoy what their child has done. It is very clear to me that the parties agree that this is an activity for their child to engage in. I think Mr. Amestoy even said he built a beam in their house, that he is, you know, really proud of his daughter how well she's doing. The only dispute is what it costs. And that piece is not fair or appropriate to [F.A.]. [F.A.] is entitled to have both of her parents' support of a reasonable activity. It is the reasonableness of the expenses that I think is the question.
>
> But if [F.A.] is as good as the parties are telling me, what level she is engaging in now, that track could lead her to college scholarships as long as she stays healthy. Gymnastics is brutal on the body. So long as she stays healthy and competitive, she could compete for any number of colleges which if not elite gymnastics, as least college level gymnastics. There are some really, really good teams in Washington State as well as surrounding states. I know we're a little bit far off from that now, but that is a trajectory that does come to mind when talking about competitive sports. I do know that club sports can get more expensive as you move forward. But I think right now we're at where we're at. The parties can talk about which meets to go to and if they don't agree, again, some meets [are] appropriate, maybe all meets aren't appropriate. Maybe Ms. Ourada would need to fund some of them on her own if Mr. Amestoy doesn't agree. But disagreeing with all of them would be veto power that he is not entitled to under joint decision making. So, that is something that was contemplated in your parenting plan and I have to take that as acknowledgement that this is a longstanding and agreed upon activity, which makes it reasonable and necessary for [F.A.] to maintain that.
>
> I will take the parties at, or I should say, Ms. Ourada at her request to share those expenses as opposed to by the percentages of what I have now calculated as 57, almost 58 and 42 percent. So, 57.6 and 42.4. I'll take her at her 50/50, I think that is appropriate that the parties both share in those expenses in the agreed expenses. As she progresses through elite

6

gymnastics if that is what her path is, I think we all have, well we have knowledge either personally or in our future professional lives of what club sports can look like as you progress and move forward and that those expenses can get pretty tight. Neither of your incomes tell me that much more than what you've described [to] me today is likely to be reasonable moving forward so you're really going to have to agree as each level increases what the family has decided to do. If you have a dispute, bring it to court, that is then, again mediation first, and then to court to decide if the two of you cannot [agree] on how to progress [F.A.] through her sport of choice.

RP at 28-30. In addition, the court agreed that "if there is another sponsorship, scholarship, [or] third party paying, . . . that would reduce both parties' obligations." RP at 32.

Amestoy appeals.

## ANALYSIS

### 1. STANDARD OF REVIEW

This court "reviews child support modifications for abuse of discretion." *In re Marriage of Bundy and Rush*, 12 Wn. App. 2d 933, 937, 460 P.3d 1111 (2020). "Abuse of discretion occurs when a decision is manifestly unreasonable or is based on . . . untenable reasons." *Id.* (alteration in original) (quoting In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)). A decision will be considered "unreasonable or untenable 'if [the] factual findings are unsupported by the record,' the superior court applied an incorrect legal standard, 'the facts do not meet the requirements of the correct standard,' or the superior court's decision lies 'outside the range of acceptable choices

7

given the facts and the legal standard.'" *Id*. (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). Additionally, this court "treat[s] the superior court's findings of fact as verities on appeal so long as those findings are supported by substantial evidence." *Id.* (quoting *Chandola*, 180 Wn.2d at 642).

2.   IMPUTED INCOME

Amestoy contends the trial court abused its discretion in calculating his income by imputing additional wages when he was already working full time at 35 hours per week, and there was no finding that he was underemployed for the purpose of reducing his child support. We agree.

Review of this issue requires the court to interpret the statute that discusses imputing income. Construction "of a statute is a question of law that we review de novo." *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). When we interpret a statute, this court's "fundamental objective is to ascertain and give effect to the legislature's intent." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016). "Where the language of a statute is clear, legislature intent is derived from the [plain] language of the statute." *Engel*, 166 Wn.2d at 578. With these principles in mind, we turn to the statute in question.

Under RCW 26.19.071(6), a court imputes income to a parent that it determines is either voluntarily unemployed or underemployed. To make this determination, a court looks at that parent's

> assets, residence, employment and earnings history, job skills, educational attainment, literacy, health, age, criminal record, dependency court obligations, and other employment barriers, record of seeking work, the local job market, the availability of employers willing to hire the parent, the prevailing earnings level in the local community, or any other relevant factors.

RCW 26.19.071(6).

However, the statute also provides that the "court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation." RCW 26.19.071(6).

Here, the trial court imputed income to Amestoy after finding that he was working part-time. This finding is based on the court's conclusion that "full-time" requires a 40-hour work week, noting that "I didn't cut them back to 35 because the statute is pretty clear that I need to pull that out to a full 40." RP at 23.

Contrary to the court's conclusion, "[f]ull-time" "does not necessarily mean forty hours per week." RCW 26.19.011(6). Instead, the statute defines "full-time" to "mean[ ] the customary number of maximum, nonovertime hours worked in an individual's historical occupation, industry, and labor market." RCW 26.19.011(6). While the trial

9

court considered the parties' prior overtime work, there is no indication that the court considered the factors set forth in RCW 26.19.011(6), and there is no finding that 40 hours per week was the customary number of maximum nonovertime hours in Amestoy's occupation, industry and labor market. This was an abuse of discretion.

Ourada acknowledges that it is not necessary for a parent to work 40 hours per week to have gainful full-time employment, but contends that the evidence in this case supports a finding that Amestoy was working less than full-time. This may be true, but the court did not find that Amestoy was working part-time based on the factors set forth in RCW 26.19.011(6).

Ourada further argues that even if Amestoy was working full-time, the court's decision to impute income was not an abuse of discretion because it was clear that Amestoy was underemployed for the purpose of reducing his child support obligation. Again, this may be true, but the trial court did not make this finding or base its decision to impute income on this basis. As an appellate court, we do not make this finding. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 53, 534 P.3d 339 (2023).

On remand, if the court finds that Amestoy is gainfully employed on a full-time basis under RCW 26.19.011(6), then it cannot impute income to him unless it also finds that he is voluntarily underemployed for the purpose of reducing his child support obligation. RCW 26.19.071(6).

3.    HEALTH CARE INSURANCE CREDIT

Amestoy argues that the trial court erred by limiting his child support credit to

F.A.'s pro-rata share of the health insurance premium.  He contends that he should

receive a credit for the full premium because he is required to cover F.A., and his

premium does not increase because he also covers his wife and her two children.  We

disagree and find no abuse of discretion.

This court "review[s] child support modifications for abuse of discretion." *Bundy*,

12 Wn. App. 2d at 937.  While ordinary health care expenses are included in the child

support schedule, health care costs are not included in the economic table.  *In re*

*Marriage of Goodell*, 130 Wn. App. 381, 392, 122 P.3d 929 (2005) (citing RCW

26.19.080(2)).  "Monthly health care costs shall be shared by the parents in the same

proportion as the basic child support obligation."  RCW 26.19.080(2).  The court must

identify the insurance premium along with extraordinary healthcare expenses, if any, on

the child support worksheet.  *Goodell*, 130 Wn. App. at 392.  The parent who pays the

insurance premium will be entitled to a credit against their obligation for paying the

monthly premium.  *Goodell*, 130 Wn. App. at 392.

In *Goodell*, a similar argument was raised with respect to calculating the monthly

premiums and the court determined it was not an abuse of discretion based on how the

court calculated the amount.  130 Wn. App. at 391-92.  There, the father paid $304 for

insurance that covered himself and his children.  *Goodell*, 130 Wn. App. at 392-93.  The

court subtracted $25, which was the cost for the father's premium, leaving $279 as the premium for the three children. *Goodell*, 130 Wn. App. at 393. The court then divided that amount by three, which resulted in a $93 credit against his child support obligation. *Id.* Importantly, the father's employer did not charge him a premium per child, but instead, for all children at a flat rate. *Id.* Thus, the court held that the methodology used to determine a fair allocation of the $304 among the father and his three children "[was] not unreasonable." *Id.*

Like *Goodell*, Amestoy paid a family rate rather than a specific amount per child. While the court would have been within its discretion to give Amestoy a credit for the full premium, it was also within the court's discretion to give credit for only F.A.'s pro-rate share of the premium.

4. EXTRACURRICULAR EXPENSES

Amestoy contends the trial court erred by ordering him to contribute to F.A.'s extraordinary expenses for club gymnastics without finding that the expenses are necessary and without determining his ability to pay the expenses. We agree.

Trial courts have the discretion to determine the "reasonableness" and "necessity" of extraordinary expenses. RCW 26.19.080(4). RCW 26.19.080(4) states that a "court may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." "To exceed the basic child support obligation, the trial court must [first] determine that [the] additional

12

amounts are reasonable and necessary, considering . . . 'the special medical, educational and financial needs of the children.'" *In re Marriage of Aiken*, 194 Wn. App. 159, 172, 374 P.3d 265 (2016) (quoting *In re Marriage of Daubert*, 124 Wn. App. 483, 496, 99 P.3d 401 (2004)). Then, "[t]he court must also determine whether the additional amounts are commensurate with the parties' income, resources, and standard of living." *Id.*

The trial court determined that the extra expenses related to F.A.'s gymnastics were reasonable and necessary. These findings were supported by evidence that F.A. had been involved in the sport for a majority of her life, was moving up competitive levels, and had the possibility to qualify for college scholarships.

However, the court did not place a cap on these additional expenses or enter findings that the additional expenses were commensurate with the parties' income, resources, and standard of living. As Amestoy points out, he and his wife have one child in common (F.A.) and they have two of her children living with them. Both Amestoy and Ourada supplied financial declarations showing they each operated on a monthly deficit. In addition, Amestoy provided undisputed evidence that F.A.'s gymnastics expenses had been previously sponsored by a different family member.

Ourada argues that the court's order considered Amestoy's finances. She points out that the order requires the parents to agree on which meets will be jointly paid, giving Ourada the option to fully fund those meets for which Amestoy does not agree to pay. While the court considered the parties finances, it did not make the requisite finding.

13

And while there is some flexibility on which meets will be funded, this ignores the other expenses such as monthly tuition and uniform expenses.

Along with finding that extraordinary expenses not included in the child support calculation are reasonable and necessary, the court must also find that a parent has the ability to pay the additional expense. *State ex rel. J.V.G. v. Van Guilder*, 137 Wn. App. 417, 430, 154 P.3d 243 (2007). This requires the court to look at the actual cost and consider the supporting parent's income and expenses, including support of other family members. Here, the court's failure to find that Amestoy had the ability to pay the new-to-him expenses was an abuse of discretion.

We reverse the court's order of child support because the order is based on the improper conclusion that full-time work requires 40 hours per week and thus Amestoy's 35-hour average work week was considered part-time work. On remand, the court shall determine if Amestoy is working full-time based on the factors set forth in RCW 26.19.011(6).

In addition, we reverse the court's order imposing undefined extraordinary expenses for gymnastics. On remand, the court can decide whether to consider any additional evidence in determining whether Amestoy can afford the additional expense. Otherwise we affirm the trial court's calculation of Amestoy's credit for health insurance premiums.

No. 39913-3-III
*In the Matter of the Marriage of Ourada v. Amestoy*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.

15