

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>YOHANNES K. TEKLEMARIAM,<br><br>Appellant,<br><br>and<br><br>DEHAB HAILEMARIAM,<br><br>Respondent. | NO. 76363-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 5, 2018 |

APPELWICK, C.J. — Teklemariam appeals the decree of dissolution and order of child support entered in the parties' dissolution.[1] He challenges the trial court's property distribution, child support calculation, and award of attorney fees. We affirm.

## FACTS

Yohannes Teklemariam and Dehab Hailemariam married in 1998. The couple has four children, who at the time of trial were 18, 16, 12 and 5.[2]

---

[1] Teklemariam also assigns error to the denial of his motion for reconsideration. Because he does not provide any specific argument regarding this issue, he has abandoned this assignment of error for purposes of this appeal. See Smith v. King, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986) (assignment of error considered waived when it was not argued and no legal authority was cited).

[2] The trial court's findings of fact occasionally reflect the age of the youngest child as 4. We accept Teklemariam's assertion that the youngest child was 5 at the time of trial.

Throughout the marriage, Teklemariam was self-employed as a truck driver and Hailemariam cared for the children and maintained the household.

Teklemariam and Hailemariam purchased a house in Renton, Washington in May 2006 for $349,950. On May 31, 2007, Hailemariam executed a quitclaim deed in favor of Teklemariam, relinquishing her interest in the house. Both parties testified that Teklemariam was facing possible deportation at the time and that Hailemariam would have been unable to make the monthly mortgage payments without his income.

The family continued to live together in the house and make monthly mortgage payments using community funds until March 5, 2015. On that date, the parties separated due to an act of domestic violence by Teklemariam. Hailemariam obtained a domestic violence protection order and Teklemariam moved out of the house. In June 2016, the parties entered into an agreed parenting plan containing RCW 26.09.191 restrictions against Teklemariam.

Teklemariam continued to pay the mortgage on the house until August 2015, when he stopped making payments and the house went into foreclosure. Shortly thereafter, Hailemariam learned that Teklemariam had arranged a short sale of the property and that she and the children would have to move out. After they did so, Teklemariam took the house off the market and moved back in.

Following two days of testimony and the review of 67 exhibits, the trial court entered findings of fact and conclusions of law, a decree of dissolution, and a child support order. The trial court awarded the house to both Teklemariam and

2

Hailemariam "as tenants in common for sale," and ordered that the parties list the house for sale within 90 days.

The findings of fact and conclusions of law stated,

> The husband asserts that he wants to keep the house for his children. If the parties could afford to keep the house the court would order that the parent with primary custody of the 4 children reside in it. The 4 bedroom house is in a nice neighborhood where there are safe places for children to play. The children enjoyed friendships with the other children in the neighborhood. The transition to the subsidized housing in White Center has been disruptive and difficult on the family. The husband's expressed desire to keep the house "for the children" may refer to the property's investment value and the long term prospect that the children would inherit or otherwise benefit somehow. He does not propose having the children occupy the house. He is allowed only 2 hours per week of supervised visitation with the children, pursuant to the agreed final parenting plan, and he has not exercised any of that time. Therefore the assertion that the house should be preserved for the children is not persuasive.

> The house should be sold and the proceeds applied to the outstanding debt. If the sale proceeds exceed the debt owed on the mortgage, the proceeds shall be shared equally. This would reflect the fact that the husband expended some of his own resources to repair and improve the home after separation and prior to sale. If the sale proceeds do not cover what remains owing on the loan after the sale, the husband should be solely responsible for any deficiency liability. This reflects the fact that Bank of America offered a short sale whereby there would be no debt remaining after the sale, and the husband unilaterally chose to terminate the short sale process.

The trial court set Teklemariam's child support transfer payment at $723.46 for all four children. The trial court declined to order spousal support "because although Dehab Hailemariam has a need, Yohannes Teklemariam does not have the ability to pay while meeting his own needs." The trial court ordered Teklemariam to pay half of Hailemariam's attorney fees:

> The Respondent, Dehab Hailemariam, incurred over $12,000 in reasonable attorney's fees and costs, and needs help to pay those

3

fees and costs. The other spouse has the ability to help pay fees and costs, while still meeting his own needs, and should be ordered to pay the respondent $6,000 as listed in the final order. The court finds that the amount ordered is reasonable.

Teklemariam appeals.

## DISCUSSION

### I. Division of Assets and Liabilities

Teklemariam challenges the trial court's order requiring the parties to sell the home and distributing the proceeds equally. In a dissolution proceeding, all property, both community and separate, is before the court for distribution. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). The trial court has broad discretion to make a just and equitable distribution of the property based on the factors enumerated in RCW 26.09.080.[3] In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). The trial court also has the authority to order the sale of the family residence in a dissolution to achieve an equitable property distribution. In re Marriage of Sedlock, 69 Wn. App. 484, 503, 849 P.3d 1243 (1993). A division of property need not be precisely equal; rather, it must be fair to both parties depending on their circumstances at the time of dissolution. RCW 26.09.080. Because the trial court is in the best position to determine what is fair

---

[3] RCW 26.09.080 provides that a trial court shall distribute property in a "just and equitable" manner after considering the following nonexclusive factors:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage or domestic partnership; and
(4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.
RCW 26.09.080.

4

and equitable, its decision regarding the sale or distribution of property will be reversed only upon a showing of a manifest abuse of discretion. See Sedlock, 69 Wn. App. at 504-05; In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009).

Teklemariam argues that the trial court erred in ordering the sale of the house because the parties were likely to sell it at a loss and his credit would be damaged. However, the trial court found that Teklemariam had an opportunity to sell the property for an amount equivalent to the mortgage debt, and chose not to do so. Teklemariam does not challenge this finding and thus it is a verity on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). In light of this uncontested finding, Teklemariam does not establish that the trial court's order was an abuse of discretion.[4]

Teklemariam also contends that the trial court erred in ordering an equal distribution of the net proceeds from the sale of the house. He argues that this is unfair because Hailemariam quitclaimed her interest in the house and "did not pay the mortgage, or make any other financial contributions." But, even if Teklemariam had established that the quitclaim deed converted the house into separate property, a trial court in a dissolution proceeding has the authority to distribute both community property and separate property. Further, relying on RCW 26.09.080(4),

---

[4] Though the parties do not address this issue, Teklemariam's claim regarding the sale of the house appears to be moot, as a review of the trial court docket shows that the house has already been sold. "'A case is moot if the court can no longer provide effective relief.'" In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).

which states a preference for awarding the family home to the spouse with whom the children reside the majority of the time, the trial court indicated that "[i]f the parties could afford to keep the house" it would have been awarded to Hailemariam. However, in recognition of the fact that Teklemariam made some repairs and improvements after the date of separation, the trial court concluded that an equal share of any proceeds was just and equitable. Teklemariam fails to establish error.

Teklemariam challenges the trial court's decision to assign "[a]ny photo enforced traffic tickets on the 2005 Toyota Sequoia that remain owing from driving that occurred on or before June 7, 2016" as his separate liability. He contends that Hailemariam was responsible for the traffic infractions and that the decision "is contradicted by the trial court's order that each party was to pay all debts they incurred since the date of separation." But, Teklemariam points to no evidence to support his claim that Hailemariam was the one driving when the traffic infractions occurred. And, the only exhibits in the record relevant to this issue show that the citations were issued in the name of Habtu Habtemicael, which was Teklemariam's former legal name. Under the circumstances, Teklemariam does not show the trial court abused its discretion.

Finally, Teklemariam challenges some of the trial court's factual findings. Teklemariam first argues that the trial court erred in finding (1) that he had not provided any documents showing he had applied for a loan modification, and (2) that he was unlikely to obtain a loan modification.

The trial court made the following findings regarding Teklemariam's attempts to modify his mortgage loan:

> . . . At the same time he was listing the house for sale, the husband was exploring a mortgage loan modification with Bank of America. The bank ultimately denied the modification and sold the loan to Fay Servicing. Bank of America wrote to the husband January 28, 2016 stating that he was not eligible for loan modification but was eligible for a short sale and that the bank would forgive the unpaid amount of the loan after applying the proceeds of the sale.
>
> . . . .
>
> The husband applied for mortgage assistance with Parkview Services in January 2016. He sought assistance from the Bloom Law Group in California in July 2016. He now asserts that he is working with Fay Servicing to try to modify the mortgage loan. However no documents from Parkview Services, Bloom Law Group, or Fay Servicing were presented to corroborate this claim. Instead, Fay Servicing's monthly statements to the husband document the unpaid monthly mortgage amount from September 1, 2015 to the present, and the current arrearage amount, which is $25,312 as of November 1, 2016.
>
> The current amount owed on the mortgage is $346,466. At the time of separation the mortgage was not in arrears. No mortgage payments have been made since August 2015 and payments are now $25,312 in arrears. The husband has lived in the house, rent free, since March or April 2016. There is no basis upon which to find that a loan modification will be offered.

(Emphasis added.)

When the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Here, none of the exhibits show that Teklemariam continued working with Fay Servicing after Bank of America denied Teklemariam's loan modification application. And, while the trial court was aware that Teklemariam continued to pursue mortgage assistance

through Parkview Services, Teklemariam did not provide any evidence to the trial court regarding the likelihood of success.[5] The trial court's findings were supported by substantial evidence.

Teklemariam also challenges the trial court's finding regarding his use of community funds. The trial court found as follows:

> The husband has spent some community funds without benefit to the community. He travelled and made monetary contributions to his mother and family related to his mother's illness. He used community funds for his wife and himself and their 4 children to travel to Europe in 2015. The flights alone cost $7[,]702.

But, in order to challenge a finding of fact on appeal, Teklemariam must demonstrate "why specific findings of the trial court are not supported by the evidence and [must] cite to the record to support that argument." In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). Teklemariam has designated only a portion of the verbatim report of proceedings, and the record before us contains no discussion of any money Teklemariam sent to his family.[6] See RAP 9.1; In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990) (the appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue raised on appeal). We decline to review this claim.

## II. Order of Child Support

Teklemariam contends that the trial court erred in calculating his net monthly income for the purposes of determining his child support obligation. We

---

[5] In a supplemental brief to this court, Teklemariam asserts that he was later able to modify the loan. But, we consider only the evidence that was before the trial court at the time a decision was made. RAP 9.1; RAP 9.11.

[6] Because of the missing record, it is unclear why the trial court determined that the travel and funds were not for the benefit of the community.

8

review an order of child support for an abuse of discretion. In re Marriage of Booth, 114 Wn.2d 772, 776, 791 P.2d 519 (1990).

Teklemariam first argues that the trial court erred in failing to deduct his self-employment taxes from his income as required by RCW 26.19.071(5)(h).[7] However, the child support worksheet shows that the trial court deducted $367.66 of self-employment taxes from Teklemariam's total monthly gross income. Teklemariam's claim is not supported by the record.

Teklemariam next contends that the trial court erred in failing to consider the earned income tax credit received by Hailemariam in 2015 as part of her income for the purposes of calculating child support. RCW 26.19.071, which provides a nonexclusive list of income sources that are included and excluded from the calculation of monthly income, makes no reference to the earned income tax credit. Because Teklemariam provides no authority or legal analysis in support of his claim that the earned income tax credit should be included in the calculation of Hailemariam's income, we decline to consider it.[8]

Teklemariam next argues the trial court erred in awarding all of the income tax exemptions for the children to Hailemariam. A court must "make provision for the allocation of the children as federal tax exemptions" in a decree of dissolution. RCW 26.09.050(1). In doing so, "[t]he court may divide the exemptions between

_____

[7] RCW 26.19.071(5)(h) requires "[t]he following expenses shall be disclosed and deducted from gross monthly income to calculate net monthly income. . . [n]ormal business expenses and self-employment taxes for self-employed persons."

[8] Teklemariam also fails to establish that the earned income tax credit would be a recurring event or introduce any evidence to show the value of the tax credit was sufficient to demonstrate error.

the parties, alternate the exemptions between the parties, or both." RCW 26.19.100. The trial court should allocate an exemption to the party who will benefit the most from it. In re Marriage of Peterson, 80 Wn. App. 148, 156, 906 P.2d 1009 (1995). Here, the children reside solely with Hailemariam. Teklemariam is permitted only two hours of supervised visitation with the children each week, and he does not take advantage of this visitation. Teklemariam fails to establish the trial court's decision was an abuse of discretion.

Teklemariam challenges the start date for the trial court's order of child support. The trial court set the start date for child support for December 1, 2016, the date that the order was signed. Teklemariam contends that the start date should be retroactive to January 1, 2016, the first month after the petition for dissolution was filed.[9] But Teklemariam does not support this conclusory assertion with any authority or legal analysis.

Finally, Teklemariam argues the trial court erred in failing to list his support obligation for each child individually. He argues that he cannot modify the amount of child support even though his oldest child graduated from high school and his support obligation for this child has terminated. Teklemariam provides no authority in support of his claim that a child support order must list the child support obligation for each child individually. Accordingly, we decline to review it.

---

[9] The trial court's calculation of Teklemariam's child support obligation was much lower than that established by a previous administrative order.

III.  Attorney Fees

Teklemariam challenges the trial court's award of attorney fees to Hailemariam. Teklemariam contends that the award of fees conflicts with the trial court's finding that he was unable to pay spousal maintenance.

A trial court has broad discretion to award attorney fees in a dissolution action under RCW 26.09.140.[10] In re Marriage of Fernau, 39 Wn. App. 695, 708, 694 P.2d 1092 (1984). The court must balance the need of the requesting party against the other party's ability to pay. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). The party challenging an award bears the burden of proving that the trial court exercised this discretion in a way that was clearly untenable or manifestly unreasonable. See In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996).

Maintenance is an on-going obligation. An award of attorney fees is a singular event. No case law precludes an award of attorney fees when maintenance has been denied. The need by Hailemariam is not challenged. The trial court had before it the income of the parties, the child support transfer amount, and the expenses of the parties. It noted that Hailemariam's work hours were necessarily limited because of her responsibilities for caring for the children, while there was no such limitation on Teklemariam's earnings. The trial court also found

_____

[10] RCW 26.09.140 provides, "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment."

11

that Teklemariam "had lived in the house, rent free, since March or April 2016."

Teklemariam fails to establish that the award was manifestly unreasonable.

Affirmed.

WE CONCUR: